**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GUARANTEED RATE, INC., | ) | |
| | ) | Case Number: |
| | ) | |
| Plaintiff, | ) | Judge: |
| | ) | |
| v. | ) | Magistrate Judge: |
| | ) | |
| EIRIK RORVIG and NATIONS LENDING CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES,**
**AND DEMAND FOR JURY TRIAL**

Guaranteed Rate, Inc. ("GRI" or the "Company"), by and through its attorneys, brings this Complaint against Eirik Rorvig ("Rorvig") and Nations Lending Corporation ("Nations") (collectively, the "Defendants"), and alleges as follows:

**NATURE OF THE CASE**

1.      GRI brings this action to stop Defendants from misusing GRI confidential information and systematically, methodically, and purposefully pilfering entire groups of GRI employees.

2.      GRI brings claims of breach of contract, misappropriation of trade secrets, and breach of fiduciary duty against Rorvig. GRI's claims against Rorvig stem from his misuse of GRI confidential information, which is a trade secret under both Federal and Wisconsin law, to improperly solicit GRI employees that he managed or worked with at GRI to resign and join him at Nations.  Rorvig's actions also violate the contractual non-solicitation and confidentiality obligations Rorvig owed GRI. To the extent this misconduct occurred while he was still employed and being paid by GRI, GRI brings a claim against Rorvig for breach of his fiduciary duty of loyalty to GRI.

15596769 v3

3.     More specifically, Rorvig is a former GRI employee who is now employed by Nations, a direct competitor of GRI. In the span of one month, eight (8) GRI employees, including Rorvig, abruptly resigned from GRI and moved to Nations. Shortly thereafter, seven (7) additional GRI employees who worked with or under Rorvig resigned to move to Nations, and several other GRI employees received communications from Rorvig soliciting them to work at Nations. As a GRI producing branch manager, Rorvig used his knowledge of and access to GRI confidential information about employee compensation, benefits, training, hiring techniques, and other personnel matters to unfairly compete with GRI and solicit employees to Nations.

4.     GRI also brings claims of tortious interference with a contract and tortious inducement of breach of fiduciary duty against Nations. GRI's claims against Nations stem from Nations' knowing and intentional encouragement and inducement of former and current GRI employees, including but not limited to Rorvig, to breach the contractual and fiduciary obligations they owe GRI by soliciting GRI employees to join Nations.

5.     Specifically, Nations, through Timothy Dowling ("Dowling"), a former GRI employee and current Nations Midwest Regional Manager, conspired with Rorvig and potentially others to solicit GRI employees to move to Nations since at least November 2021. In the span of a few short months, fifteen (15) GRI employees from the same branch and/or region, including Rorvig, have resigned from GRI to join Nations.

6.     Despite receiving multiple cease and desist letters from GRI regarding this misconduct, Rorvig and Nations (through Dowling and in its independent capacity) have persisted in their improper solicitation of GRI employees, including as recently as March 14, 2022.

7.     The full extent of Defendants' unlawful conduct is presently unknown because Rorvig has taken significant efforts to conceal his wrongdoing from GRI, including holding

15596769 v3

meetings in person, texting on personal devices, and having oral conversations on the telephone. On information and belief, Defendants are also communicating—or having people communicate on their behalf—with GRI employees on personal email addresses, through social media platforms (e.g., LinkedIn) and other channels hidden from GRI in order to covertly poach current GRI employees. Defendants' internal communications on Nations' systems are also currently inaccessible to GRI. Nevertheless, GRI has already uncovered substantial evidence of ongoing misconduct by these Defendants that has harmed GRI, and that will continue to cause irreparable harm unless Defendants are enjoined.

## PARTIES

8.      GRI is a corporation organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business located at 3940 North Ravenswood Avenue in Chicago, Illinois. GRI is a citizen of the State of Illinois. GRI is in the business of originating, closing, and selling mortgage loans and related products, and is one of the leading mortgage lenders in the United States.

9.      Rorvig is an individual who resides in Madison, Wisconsin. Rorvig is a citizen of the State of Wisconsin. Rorvig and GRI executed the Producing Branch Manager Compensation Plan and Agreement on December 27, 2019. ("Rorvig Agreement," attached hereto as **Exhibit A**.)

10.      Nations Lending Corporation is an Ohio corporation with its headquarters and principal place of business located at 4 Summit Park Drive, Suite 200, Independence, Ohio.

## JURISDICTION AND VENUE

11.      This Court has original jurisdiction, pursuant to 28 U.S.C. §1331, because this action involves a claim arising under the laws of the United States, the Defend Trade Secrets Act

15596769 v3

of 2016, 18 U.S.C. §1832, et seq. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

12.     This Court also has original jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1), as this is a civil action between parties of diverse citizenship and the amount in controversy exceeds $75,000.

13.     Venue is proper under 28 U.S. Code § 1391 because much of the wrongdoing and the harms associated with that wrongdoing occurred in this judicial district. In addition, both Rorvig and Nations conduct business in this District.

14.     Furthermore, Rorvig consented to the exclusive jurisdiction of and venue in the federal court located in Cook County, Illinois, for the purpose of actions arising out of his employment with GRI and/or the Rorvig Agreement. (Ex. A, p. 16.)

## BACKGROUND FACTS

### GRI

15.     GRI is a residential mortgage lender and is licensed to do business in every state. GRI employs loan officers across the country to offer residential mortgage loans to consumers. GRI is one of the top five retail mortgage lenders in the United States, and GRI and its affiliated companies funded more than $73 billion in loans in 2020.

16.     GRI has found success in the mortgage industry through its operations model and organizational structure, which includes a corporate office located in Chicago, Illinois and branch offices strategically located in key areas around the country, including a significant presence in the Midwest.

17.     The branch offices service the surrounding areas and mainly contain local sales teams made up of loan officers and operations support staff.

15596769 v3

18.     These branch offices are run by branch managers, whose duties include overseeing and building the branch operations, recruiting top loan originators, and oftentimes managing loan processers and operational staff.

19.     Loan officers are licensed salespeople who source potential borrowers, take loan applications, and quote mortgage rates.

20.     GRI's operations staff help loan officers source business, collect loan documents, and otherwise process loans by completing assorted tasks. GRI's operations staff have various titles depending on their specific job duties, including Loan Coordinator and Licensed Sales Assistant.

21.     Each position plays a pivotal role in GRI's success. As a result, GRI invests substantial time and money training and developing its employee base. Moreover, GRI expends substantial time and money building up its various branches in regions across the country to ensure success in cultivating and building local contacts, goodwill, and market share.

22.     GRI equips its employees with the tools they need to provide excellent client service and close mortgage loans for customers and prospective customers. GRI provides employees access to a trove of GRI confidential and proprietary information, cutting-edge technology and other resources. GRI also equips its loan officers with a variety of marketing resources that enable them to grow GRI's customer base and referral networks, building up from the local branch levels to benefit the regions and the company as a whole.

23.     GRI protects the confidential and proprietary information described in paragraph 22 by, among other things: limiting the disclosure and use of this information to only the GRI employees who need this information to perform their duties on behalf of GRI; developing and implementing policies and procedures regarding the use and protection of confidential

15596769 v3

information; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access its networks; and requiring employees to execute written agreements that protect against the misuse and improper disclosure of this information.

24.     GRI receives a financial and economic benefit as a result of the above information being kept confidential and not publicly available. Indeed, and as this Complaint describes in more detail below, a GRI competitor would receive a significant economic benefit and other industry advantages if the information was stolen and then used by a competitor.

25.     Similarly, a GRI competitor could not easily replicate or reengineer the confidential information described above without incurring significant economic, technological and labor costs.

## RORVIG'S EMPLOYMENT AND AGREEMENT WITH GRI

26.     As a condition of his employment, Rorvig signed the Rorvig Agreement on December 27, 2019. (Ex. A, pp. 8, 17.)

27.     As a Producing Branch Manager in Wisconsin, Rorvig's duties included procuring customers for the sale of mortgage loans to be secured by residential real estate through direct customer contact. He also assisted in recruiting top originators, strengthening his branch operations, and managing the operations and employees of his branch.

28.     As a Producing Branch Manager, Rorvig was entrusted with GRI's confidential information to assist him with these duties. The confidential information, as defined in the Rorvig Agreement ("Confidential Information"), included but was not limited to information about GRI's local sales, operations, business, personnel matters, the identity of GRI's top-performing employees, hiring criteria, pricing and cost structure of GRI's products and services, client or potential client identities, client relationship histories, and training techniques. (Ex. A, p. 13.)

6

29.     As a Producing Branch Manager, Rorvig used GRI's Confidential Information on a daily basis in order to perform the duties and obligations he owed GRI.

30.     As a Producing Branch Manager located in Wisconsin, Rorvig reported up to Dowling, GRI's Midwest Regional Manager until May 14, 2021, when Dowling resigned from GRI to join Nations as a Midwest Regional Manager.

31.     The Rorvig Agreement contains a Non-Solicitation Provision, which includes specific and unambiguous restrictions on the solicitation of GRI employees during a Restricted Period ("Non-Solicitation Obligation"). (Ex. A, pp. 14-15.) The Restricted Period for Rorvig is defined as "the period beginning with the first date of your employment with the Company and ending 24 months after the last day of your employment." (*Id.* at 14.)

32.     The Non-Solicitation Provision states:

> During the Restricted Period, you may not, directly or indirectly, solicit or attempt to solicit, entice, recruit influence, persuade, induce, promote, facilitate, encourage or assist in the solicitation of any Person employed/engaged by the Company during your last 12 months of employment with the Company or during the remainder of the Restricted Period to end their employment/engagement with the Company and/or join you as a partner, agent, employee, independent contractor or otherwise in a business venture or other business relationship with which you become employed or affiliated….During the Restricted Period, you may not supervise, manage, or oversee the work of any former employee of the Company, the identity of which you learned during your employment with the Company.
>
> You may ask the Company to provide you with written consent to engage in any of the foregoing activities.  The Company may approve or deny any such request in the Company's sole discretion.
>
> **If you fail to comply with any provision of this Section V(d), you must pay to the Company as liquidated damages, and not as a penalty, an amount equal to fifty-thousand dollars ($50,000) for each such instance of non-compliance, and the Restricted Period will be extended an additional 24 months from the date of non-compliance.** Your payment of such liquidated damages will not relieve you of any other obligation or amounts that you owe the Company under this Agreement.  You understand and acknowledge that the payment of these liquidated damages is fair and

15596769 v3

equitable consideration for any failure by you to comply with this Section V(d), and is not a penalty. You must pay all of the Company's reasonable attorneys' fees and all costs and expenses relating to or arising out of any action to enforce, defend or prosecute any provision of this Section V(d).

(Ex. A, pp. 14-15.)(emphasis in original.)

33.     The Rorvig Agreement also contains a Non-Disclosure of Confidential Information Provision, which includes specific and unambiguous restrictions on using and disclosing GRI Confidential Information, as defined therein, for GRI-business purposes only ("Confidentiality Obligation"). The Non-Disclosure of Confidential Information Provision states:

(a) Confidential Information

During your employment with the Company, you may discover, develop, and/or be entrusted with (a) confidential and proprietary information and trade secrets that are or will be owned by the Company and are not available to the general public or the Company's competitors, including information about the Company's sales, operations, financial condition, financial projections, profit margins, personnel matters, the identity of the Company's top-performing employees, hiring criteria and training techniques, business goals, strategic plans, promotional strategies, pricing and cost structure, client or potential client identities, client relationship histories, client records, client service matters, client preferences, identity of vendors and suppliers, special vendor and supplier relationships, pricing and delivery terms, computer programs and codes, and other confidential aspects of the Company and its business and operations; (b) information for which the Company is subject to confidentiality requirements due to contractual and/or regulatory obligations; and (c) other matters, documents, materials and information belonging or relating to the Company (collectively "Confidential Information"). The Company has developed and will develop a wealth of intimate knowledge regarding its Confidential Information and, for these and other reasons, the Company has a legitimate and protectable interest in the identity of its Confidential Information, including the identity of its clients and the method of operations utilized by the Company.

(b) Use of Company's Confidential Information

As consideration for your employment, you will not use any Confidential Information for your own benefit, or divulge to or use the Confidential Information for the benefit of any competitor, customer, or any other Person or entity. You may not seek or accept any Confidential Information from

8

any Person, unless you are expressly authorized by the Company to do so in connection with your employment duties and obligations under this Agreement.

Confidential Information includes the identities of clients and borrowers for whom you originated loans while an employee of the Company. However, you may contact and/or solicit these persons during or after your employment with the Company, provided that no such Person (i) has submitted a loan application to the Company at that time, or would have submitted a loan application to the Company but for you actions or omissions, (ii) has a loan in process with the Company at that time, or would have had a loan in process with the Company but for your act or omissions,(iii) has closed a loan with the Company and the Early Prepayment Period set forth in the loan purchase and sale agreement entered into by and between the Company and the investor has not expired.

(Ex. A, pp. 13-14.)

34.     By signing the Rorvig Agreement, Rorvig acknowledged that the Non-Solicitation and Non-Disclosure of Confidential Information Provisions in the Rorvig Agreement "are reasonable in all respects and are necessary to protect the legitimate business and competitive interests of [GRI]." (Ex. A, p. 15.)

35.     Because the Non-Solicitation and Confidentiality Obligations are intended to survive after an employee leaves GRI, the Rorvig Agreement also contains a provision whereby Rorvig is obligated to notify prospective employers of his ongoing obligations to GRI ("Notification Obligation"). The Notification Obligation states:

You must notify any prospective employer or other Person for whom you plan to provide loan-related services about your obligations in this Section V, and that such Person may obtain a copy of these obligations from the Company's Human Resources or Legal Department.

(Ex. A, p. 13.)

36.     Accordingly, and based upon information and belief, Rorvig notified Nations of the Non-Solicitation and Non-Disclosure of Confidential Information Provisions in the Rorvig Agreement, and the duties and obligations he owes GRI under those provisions.

15596769 v3

37.     Unfortunately, and as more fully explained below, Rorvig chose to ignore and violate the duties and obligations he owes GRI.

38.     Also and as more fully explained below, and based upon information and belief, Nations either encouraged, or turned a blind eye to, Rorvig ignoring and violating the duties and obligations he owes GRI.

## RORVIG VIOLATES THE AGREEMENT AND THE DUTIES AND OBLIGATIONS HE OWES GRI

39.     The Non-Solicitation Obligation, Confidentiality Obligation, and Notification Obligation (together, the "Post-Employment Obligations") apply both during and after an employee's employment with GRI.

40.     Occasionally, former employees run afoul of their Post-Employment Obligations. When GRI suspects an employee has or will violate their Post-Employment Obligations, GRI's legal team sends letters both to the former employee and to the new employer, putting all parties on notice of these Post-Employment Obligations.

41.     Rorvig resigned from GRI effective December 23, 2021. Shortly thereafter, in January 2022, Rorvig began working at Nations as a producing branch manager, the same title he held at GRI.

42.     Before resigning from GRI, Rorvig actively solicited GRI employees to leave GRI and join him at Nations.

43.     For example, prior to November 24, 2021, Rorvig met with GRI employees who were members of his GRI team at his home to discuss the GRI employees leaving GRI and joining Nations.

44.     Rorvig also had other meetings with GRI employees, outside of his home and before he resigned from GRI, where Rorvig spoke with the GRI employees about leaving GRI and

joining Nations.

45. During these meeting(s) with GRI employees that occurred before Rorvig resigned from GRI, Rorvig actively solicited GRI employees to leave GRI and join Nations.

46. Based upon information and belief, Rorvig used and relied on GRI Confidential Information, including confidential GRI compensation information, to solicit GRI employees to leave GRI and join Nations.

47. Rorvig also had meetings and conversations with Dowling, now a Nations employee and business leader, before he resigned from GRI about soliciting and moving other GRI employees to Nations.

48. Before resigning from GRI, Rorvig also met and spoke with others at Nations, and received "positive feedback" from Nations, about meeting with and soliciting GRI employees to leave GRI and join Nations.

49. As a result of Rorvig's solicitations, several GRI employees Rorvig managed or worked with at GRI—including 1) Meredith Richardson; 2) Kyle McManners; 3) Randy Barwick; 4) Chris Rollins; and 5) Paul Gagne—left GRI and joined Nations.

50. Based upon information and belief, the five former employees mentioned in Paragraph 49 are now working directly with or for Rorvig at Nations.

51. Based upon information and belief, Nations knew that Rorvig contacted and/or spoke with Richardson, McManners, Barwick, Rollins, and Gagne about leaving GRI and joining Nations before Rorvig resigned from GRI.

52. Based upon information and belief, Nations encouraged Rorvig to solicit GRI employees Richardson, McManners, Barwick, Rollins, and Gagne to leave GRI and join Nations before Rorvig resigned from GRI.

53.     Based upon information and belief, Nations knew that Rorvig soliciting GRI employees Richardson, McManners, Barwick, Rollins, and Gagne to leave GRI and join Nations violated the Rorvig Agreement.

54.     GRI sent Rorvig a cease and desist letter on January 5, 2022 because Rorvig was violating the Non-Solicitation and Confidentiality Obligations he owed GRI. (January 5, 2022 Cease and Desist Letter ("First Rorvig Letter"), attached hereto as **Exhibit B**.) In the First Rorvig Letter, GRI noted that:

> Recently, the following Guaranteed Rate employees whom you managed or worked with resigned in a manner that appears staggered and deliberately coordinated: 1) Meredith Richardson (December 10, 2021); 2) Kyle McManners (December 23, 2021); 3) Randy Barwick (December 29, 2021); 4) Chris Rollins (December 30, 2021); and 5) Paul Gagne (January 4, 2022). We suspect you used Guaranteed Rate Confidential Information regarding the identities, performance and compensation of these individuals to recruit them to work at Nations, and that you are doing so in conjunction with former Guaranteed Rate employee Timothy Dowling (current Nations Midwest Regional Manager).

(Ex. B, p. 1-2.)

55.     In the First Rorvig Letter, GRI demanded that Rorvig immediately cease and desist all actions that constitute violations of his Non-Solicitation and Confidentiality Obligations to GRI, and reminded him that, under the Rorvig Agreement, he would be liable for $50,000 in damages for each violation of the Non-Solicitation Obligation. (Ex. B, p. 2.) GRI also informed Rorvig that, to the extent any violations of the Non-Solicitation and Confidentiality Obligations occurred while he still worked for GRI, such violations would also constitute a breach of the fiduciary duties Rorvig owed GRI. (*Id.*)

56.     GRI copied Nations on the First Rorvig Letter "to make it aware of [Rorvig's] continuing obligations to Guaranteed Rate and of these issues." (Ex. B, p. 2.) GRI also demanded that Nations and Rorvig take steps to maintain and preserve documents related to these issues. (*Id.*)

15596769 v3

57.     Unfortunately, Rorvig's solicitation of GRI employees did not cease after GRI issued the First Rorvig Letter to Rorvig and Nations.

58.     Instead, Rorvig continued soliciting GRI employees that he managed or worked with, including GRI employees Richard Cohen, Lee Kampa, and Dawn Kaczmark, to leave GRI and join Nations.

59.     Based upon information and belief, Rorvig used and relied on GRI Confidential Information, including confidential GRI compensation information, to solicit Cohen, Kampa, and Kaczmark to leave GRI and join Nations.

60.     Based upon information and belief, Nations knew that Rorvig contacted and/or spoke with Cohen, Kampa, and Kaczmark about leaving GRI and joining Nations.

61.     Based upon information and belief, Nations was aware of Rorvig soliciting GRI employees Cohen, Kampa, and Kaczmark to leave GRI and join Nations.

62.     Based upon information and belief, Nations encouraged Rorvig to solicit GRI employees Cohen, Kampa, and Kaczmark to leave GRI and join Nations.

63.     Based upon information and belief, Nations knew that Rorvig soliciting GRI employees Cohen, Kampa, and Kaczmark to leave GRI and join Nations violated the Rorvig Agreement.

64.     As a result of Rorvig's and Nations' continued illegal activity, on January 18, 2022, GRI sent Rorvig a second cease and desist letter. (January 18, 2022 Cease and Desist Letter ("Second Rorvig Letter"), attached hereto as **Exhibit C**.) In the Second Rorvig Letter, GRI noted that since it had sent the First Rorvig Letter, three (3) additional GRI employees whom Rorvig managed or worked with had resigned in quick succession to join Nations:

> Since I sent the January 5th Letter, and indeed since your response on January 7th, we have learned that three other Guaranteed Rate employees

13

whom you managed or with whom you worked resigned, and we have reason to believe they will be joining you and Tim Dowling at Nations Lending ("Nations"), your new employer. Specifically, we learned that Richard Cohen resigned on January 10, 2022, Lee Kampa resigned on January 14, 2022, and Dawn Kaczmark resigned on January 17, 2022. Their resignations appear to be a continuation of the coordinated campaign waged by you and Mr. Dowling to solicit Guaranteed Rate employees to Nations: 1) Meredith Richardson (December 10, 2021); 2) Kyle McManners (December 23, 2021); 3) Randy Barwick (December 29, 2021); 4) Chris Rollins (December 30, 2021); and 5) Paul Gagne (January 4, 2022). We suspect you used Guaranteed Rate Confidential Information regarding the identities, performance and compensation of these individuals to recruit them to work at Nations.

(Ex. C, p. 1.)

65.     At Nations, Rorvig manages and/or directly works with several of these former GRI

employees, including Gagne, McManners, Rollins, Kampa, Kaczmark, and Cohen.

66.     In the Second Rorvig Letter, GRI informed Rorvig that its investigation into his

violations had unearthed evidence that Rorvig was working in conjunction with Dowling to solicit

GRI employees to Nations, in violation of both of their Post-Employment Obligations to GRI:

Specifically, we have found emails from Joe Noonan to you and Mr. Cohen detailing his conversations with you both regarding the circumstances of your moves from Guaranteed Rate to Nations. In one email, dated November 24, 2021 and with the subject 'Factors to Decision → New Mortgage Company,' Mr. Noonan provides notes from his conversation with you, detailing the following: 1) you met with your team at your home the previous day to discuss moving to a new mortgage company and that it was a 'productive' conversation; and 2) you had '[g]reat conversations with Tim Dowling @ Nations Bank.' In another email, dated December 14, 2021, Mr. Noonan writes to Mr. Cohen recapping their conversation, noting that Mr. Cohen is '[e]xcited to move to Nations Bank in January with Eirik's team' and that Mr. Cohen had '[s]poke[n] to team members at Nations and feedback is positive.'

(Ex. C, p. 1-2.)

67.     GRI copied Nations on the Second Rorvig Letter to again "make it aware of

[Rorvig's] continuing obligations to Guaranteed Rate and of these issues." (Ex. C, p. 2.) GRI also reiterated its demand that Rorvig and Nations maintain and preserve all documents related to this dispute. (*Id.*)

68.     On February 1, 2022, GRI sent Rorvig a third and final cease and desist letter in an effort to get his violations to stop. (February 1, 2022 Letter ("Third Rorvig Letter"), attached hereto as **Exhibit D**.) In the Third Rorvig Letter, GRI again outlined Rorvig's many violations of his Non-Solicitation and Confidentiality Obligations to GRI, and demanded written assurances from Rorvig that he would stop misusing GRI Confidential Information and soliciting GRI employees in violation of his Non-Solicitation and Confidentiality Obligations to GRI. (*Id.* at 2-3.)

69.     In the Third Rorvig Letter, GRI also sought to resolve this dispute but its overtures were rebuffed. (Ex. D, p. 2-3.)

70.     As of the date of this filing, Rorvig continues to violate his Non-Solicitation and Confidentiality Obligations to GRI. Since GRI sent the Third Rorvig Letter, GRI has learned that Rorvig has contacted and/or spoken with at least four GRI branch managers about leaving GRI and joining Nations.

71.     One of these branch managers, Tony Burns, resigned from GRI on March 29, 2022 to join Nations.

72.     Based on Rorvig's flagrant violations of his Non-Solicitation and Confidentiality Obligations—many of which occurred even after he received cease and desist letters from GRI—there is little doubt that Rorvig will continue his campaign to misuse GRI Confidential Information and improperly solicit GRI employees unless enjoined.

### ADDITIONAL ILLEGAL ACTIVITY BY NATIONS

73.     Dowling resigned from his position as GRI's Midwest Regional Manager on May

14, 2021. Shortly thereafter, Dowling began working for Nations as its Midwest Regional Manager.

74.     As part of his employment with GRI, Dowling had executed an employment agreement with GRI that contains the same Non-Solicitation and Confidentiality Obligations as the Rorvig Agreement.

75.     On May 25, 2021, GRI sent a letter to Dowling reminding him of his Post-Employment Obligations to GRI. (May 25, 2021 Letter ("Reminder Letter"), attached hereto as **Exhibit E**.) In the Reminder Letter, GRI advised Dowling of his ongoing Non-Solicitation and Confidentiality Obligations to GRI. (*Id.*)

76.     GRI copied Nations on the Reminder Letter in order to make Nations aware of Dowling's Post-Employment Obligations to GRI. (Ex. E.)

77.     On January 5, 2022, GRI sent Dowling a cease and desist letter because it had strong reason to believe Dowling had violated his Non-Solicitation and Confidentiality Obligations to GRI. (January 5, 2022 Cease and Desist Letter ("First Dowling Letter"), attached hereto as **Exhibit F**.) In the First Dowling Letter, GRI noted the basis for its belief in Dowling's misconduct:

> Recently, the following Guaranteed Rate employees resigned in a manner that appears staggered and deliberately coordinated: 1) Meredith Richardson (December 10, 2021); 2) Barbara Miller (December 20, 2021); 3) Eirik Rorvig (December 23, 2021); 4) Kyle McManners (December 23, 2021); 5) Randy Barwick (December 29, 2021); 6) Chris Rollins (December 30, 2021); and 7) Paul Gagne (January 4, 2022). These are individuals whom you managed at Guaranteed Rate or who worked directly with individuals you managed at Guaranteed Rate. We suspect you used Guaranteed Rate Confidential Information regarding the identities, performance and compensation of these individuals to recruit them to work at Nations.

(Ex. F, p. 1-2.)

78.     GRI copied Nations on the First Dowling Letter in order "to make it aware of [Dowling's] continuing obligations to Guaranteed Rate and of these issues." (Ex. F, p. 2.) GRI also demanded that Nations and Dowling take steps to maintain and preserve documents related to these issues. (*Id.*)

79.     Subsequently, on January 18, 2022, GRI sent Dowling a second cease and desist letter. (January 18, 2022 Cease and Desist Letter ("Second Dowling Letter"), attached hereto as **Exhibit G**.) In the Second Dowling Letter, GRI noted that since it had sent the First Dowling Letter, three (3) additional GRI employees whom Dowling managed or worked with had resigned in quick succession to join Nations:

> Since I sent the January 5th Letter, and indeed since your response on January 7th, we have learned that three other Guaranteed Rate employees resigned, and we have reason to believe they will be joining you and Eirik Rorvig at Nations Lending ("Nations"), your employer. Specifically, we learned that Richard Cohen resigned on January 10, 2022, Lee Kampa resigned on January 14, 2022, and Dawn Kaczmark resigned on January 17, 2022. Their resignations appear to be a continuation of the coordinated campaign waged by you and Mr. Rorvig to solicit Guaranteed Rate employees to Nations: 1) Meredith Richardson (December 10, 2021); 2) Barbara Miller (December 20, 2021); 3) Mr. Rorvig himself (December 23, 2021); 4) Kyle McManners (December 23, 2021); 5) Randy Barwick (December 29, 2021); 6) Chris Rollins (December 30, 2021); and 7) Paul Gagne (January 4, 2022). The above are individuals whom you managed at Guaranteed Rate or who worked directly with individuals you managed at Guaranteed Rate. We suspect you used Guaranteed Rate Confidential Information regarding the identities, performance and compensation of these individuals to recruit them to work at Nations.

(Ex. G, p. 1.)

80.     In the Second Dowling Letter, GRI informed Dowling that its investigation into his violations had unearthed evidence that Dowling was working in conjunction with Rorvig to solicit GRI employees to Nations, in violation of both of their Post-Employment Obligations to GRI:

> Specifically, we have found emails from Joe Noonan to Mr. Rorvig and Mr. Cohen detailing his conversations with them regarding the circumstances of

their moves from Guaranteed Rate to Nations. In one email, dated November 24, 2021 and with the subject 'Factors to Decision → New Mortgage Company,' Mr. Noonan provides Mr. Rorvig with notes from their conversation, detailing the following: 1) Mr. Rorvig met with his team at his home the previous day to discuss moving to a new mortgage company and that it was a 'productive' conversation; and 2) Mr. Rorvig had '[g]reat conversations with Tim Dowling @ Nations Bank.' In another email, dated December 14, 2021, Mr. Noonan writes to Mr. Cohen recapping their conversation, noting that Mr. Cohen is '[e]xcited to move to Nations Bank in January with Eirik's team' and that Mr. Cohen had '[s]poke[n] to team members at Nations and feedback is positive.'

(Ex. G, p. 1-2.)

81. GRI copied Nations on the Second Dowling Letter in order to, again, "make it aware of [Dowling's] continuing obligations to Guaranteed Rate and of these issues." (Ex. G, p. 2.) GRI also reiterated its demand that Dowling and Nations maintain and preserve all documents related to this dispute. (*Id.*)

82. On February 1, 2022, GRI sent Dowling a third and final cease and desist letter in an effort to get his violations to stop. (February 1, 2022 Letter ("Third Dowling Letter"), attached hereto as **Exhibit H**.) In the Third Dowling Letter, GRI again outlined Dowling's many violations of his Non-Solicitation and Confidentiality Obligations to GRI, and demanded written assurances from Rorvig that he would stop misusing GRI Confidential Information and soliciting GRI employees in violation of his Non-Solicitation and Confidentiality Obligations to GRI. (*Id.* at 2-3.)

83. In the Third Dowling Letter, GRI also sought to resolve this dispute, but its overtures were rebuffed. (Ex. H, p. 2-3.)

84. On February 3, 2022, GRI sent Nations a letter regarding the ongoing violations of Dowling, its Midwest Regional Manager, and Rorvig, its Producing Branch Manager. (February 3, 2022 Letter ("Nations Letter"), attached hereto as **Exhibit I**.)

18

15596769 v3

85.     In the Nations Letter, GRI demanded, among other things, that Nations instruct Dowling and Rorvig to stop misusing GRI Confidential Information and soliciting GRI employees in violation of their Non-Solicitation and Confidentiality Obligations to GRI. (Ex. I, p. 2.)

86.     In the Nations Letter, GRI informed Nations that it would take necessary steps to enforce its contractual rights and legitimate business interests, and that it may seek damages and injunctive relief against Dowling, Rorvig and Nations if the violations of Dowling's and Rorvig's Non-Solicitation and Confidentiality Obligations to GRI continued. (Ex. I, p. 2.)

87.     Unfortunately and based upon the continued actions of Rorvig and Dowling, Nations did not instruct Dowling and Rorvig to stop misusing GRI Confidential Information.

88.     Nor did Nations instruct Rorvig and Dowling to stop soliciting GRI employees.

89.     Not surprisingly then, even after the Nations Letter was sent, Nations continues to pilfer GRI employees from the Midwest Region.

90.     On information and belief, this poaching of GRI employees is happening through Rorvig and Dowling (and potentially other former and current GRI employees) and with the assistance and misuse of GRI Confidential Information.

91.     More specifically, on February 16, 2022, Katie Dorece, a vice president for market growth in the Wisconsin/Illinois Region of GRI's Midwest Division, resigned from GRI to join Nations as a senior recruiter.

92.     On March 15, 2022, Nick Wurzer, a branch manager from GRI's Wisconsin/Illinois Region, resigned from GRI to join Nations.

93.     When resigning, Wurzer preemptively went out of his way to declare that Dowling never contacted him, and confirmed that Rorvig had contacted him regarding the compensation model at Nations.

94.     On March 15, 2022, Adam Cook, a GRI loan officer who reported to Wurzer resigned to go to Nations. Dorece, a former GRI vice president for market growth now working for Nations, sent Cook messages on LinkedIn on or around the time Cook resigned from GRI.

95.     On March 21, 2022, Matt Hoekstra, a GRI loan officer who reported to Wurzer resigned to go to Nations.

96.     On March 29, 2022, Tony Burns, a branch manager from GRI's Wisconsin/Illinois Region, resigned from GRI to join Nations. Rorvig had solicited Burns to join Nations prior to Burns' resignation from GRI.

97.     As of this filing and since Dowling joined Nations in May 2021 as its Midwest Regional Manager, the following GRI employees have been improperly solicited and poached from the Wisconsin/Illinois Region of GRI's Midwest Division through Dowling as Nations' Midwest Manager and/or through Rorvig before and after Rorvig resigned from GRI:

| Name | GRI Resignation Date | GRI Position |
|------|----------------------|--------------|
| Meredith Richardson | December 10, 2021 | Loan Coordinator who worked with Barbara Miller |
| Barbara Miller | December 20, 2021 | Branch Manager in the Wisconsin/Illinois Region who reported to Dowling |
| Eirik Rorvig | December 23, 2021 | Branch Manager in the Wisconsin/Illinois Region who reported to Dowling |
| Kyle McManners | December 23, 2021 | Loan officer who reported to Rorvig |
| Randy Barwick | December 29, 2021 | Area Manager who reported to Dowling |
| Chris Rollins | December 30, 2021 | Loan officer who reported to Rorvig |

| Paul Gagne | January 4, 2022 | Sales assistant who reported to Rorvig |
| Richard Cohen | January 10, 2022 | Loan officer who reported to Rorvig |
| Lee Kampa | January 14, 2022 | Loan officer who reported to Rorvig |
| Dawn Kaczmark | January 17, 2022 | Loan officer who reported to Rorvig |
| Katie Dorece | February 16, 2022 | Vice president for market growth in the Wisconsin/Illinois Region |
| Nick Wurzer | March 15, 2022 | Branch manager in the Wisconsin/Illinois Region |
| Adam Cook | March 15, 2022 | Loan officer who reported to Wurzer |
| Matt Hoekstra | March 21, 2022 | Loan officer who reported to Wurzer |
| Tony Burns | March 29, 2022 | Branch manager in the Wisconsin/Illinois Region |

98.     These resignations have caused severe business and operations disruption to GRI, as they include key figures from all levels of GRI's loan origination process in its Wisconsin/Illinois Region specifically, and its Midwest Division more generally. The losses to GRI include four (4) branch managers, seven (7) loan officers, and various operations and sales staff such as production managers, recruiters, loan coordinators and sales assistants.

99.     Moreover, GRI is aware that Nations, through Rorvig and Dowling, continues to solicit GRI employees.

100.    In fact, three additional branch managers have been contacted by Rorvig in March 2022 leave GRI and join Nations.

101.    Rorvig's contacting of the three additional branch managers was a solicitation by Rorvig of the three branch managers and, based upon information and belief, approved and/or encouraged by Nations.

102.    In addition, Wurzer has almost certainly been in contact with, and solicited by, Dowling given his preemptive denial of the same.

103.    Nations has been aware of the Non-Solicitation and Confidentiality Obligations that GRI's former employees owe GRI since at least May 25, 2021, when GRI sent the Reminder Letter to Dowling and copied Nations. (Ex. E.)

104.    Moreover, Nations has been on notice of its employees' violations of the Non-Solicitation and Confidentiality Obligations since it was copied on the First and Second Rorvig and Dowling Letters on January 5, 2022 and January 18, 2022, respectively, and since Nations received a separate letter from GRI regarding these issues on February 3, 2022. (Ex. B, C, F, G, I.)

105.    Nevertheless, Nations continues its encouragement, inducement, and/or condoning of its employees' violations of the Non-Solicitation and Confidentiality Obligations they owe GRI.

106.    Given Nations utter disregard for the Non-Solicitation and Confidentiality Obligations the former GRI employees owe GRI, GRI has reason to believe that Nations will continue this campaign to improperly poach and attempt to poach GRI employees—and enjoy the ill-gotten benefits thereof—unless enjoined.

## **GRI'S RIGHT TO INJUNCTIVE RELIEF**

107.    Rorvig has materially breached his Agreement and fiduciary duties to GRI, committed other violations of law, and is likely to continue to do so—and in fact has continued to do so—unless enjoined as requested herein.

15596769 v3

108.     Nations has induced and encouraged Dowling and Rorvig to breach their contractual and fiduciary obligations to GRI. Moreover, Nations has tortiously interfered and unfairly competed with GRI by reaping the benefits of wrongfully poaching key figures from GRI's Midwest Region within short order and through ill-gotten means and information. Nations is likely to continue this misconduct—and in fact has continued this misconduct—unless enjoined as requested herein.

109.     Defendants' breaches and other violations of law have caused and will continue to result in substantial, irreparable, and foreseeable harm to GRI for which there is no adequate remedy at law.

110.     Thus, without the preliminary and permanent injunctive relief requested herein, GRI will continue to suffer substantial and irreparable harm for which there is no adequate remedy at law.

111.     GRI has a substantial likelihood of success on the merits of its claims.

112.     The threat of harm to GRI in the absence of injunctive relief as requested herein far outweighs the threat of any harm to Defendants if injunctive relief is granted. As noted above, GRI faces substantial and irreparable harm if Defendants' breaches and violations of law are permitted to continue unabated.

113.     In contrast, there is no hardship imposed on Defendants. Rorvig and Nations remain free to conduct business, but without the unfair competitive aid of stolen and misused GRI Confidential Information and improper solicitation of GRI employees and inducement to breach contractual and fiduciary obligations. Defendants' only burden is to comply with the law and for Rorvig to comply with the Rorvig Agreement, compete fairly and lawfully in the market, and refrain from reaping any illicit gain or benefit from the breach of his contractual and fiduciary

obligations to GRI.

114.    The public interest favors preventing Defendants from reaping illicit gains by breaching or inducing the breach of contractual and fiduciary obligations to GRI and committing other violations of law, including, among other things, misusing GRI's Confidential Information for their own benefit and to improperly solicit GRI employees.

## CLAIMS

### COUNT I – BREACH OF CONTRACT (CONFIDENTIAL INFORMATION)
### (Against Rorvig)

115.    GRI incorporates and re-alleges Paragraphs 1 through 114 as if fully set forth herein.

116.    The Rorvig Agreement is a valid and enforceable contract that imposes upon Rorvig certain contractual obligations and restrictive covenants, including the Confidentiality Obligation.

117.    GRI has performed all of its obligations under the Rorvig Agreement or those obligations are excused under the circumstances.

118.    Pursuant to the Non-Disclosure of Confidential Information Provision in the Rorvig Agreement, Rorvig was and is prohibited from seeking, accepting, providing, disclosing, or using for his own benefit or the benefit competitor like Nations or other third party GRI Confidential Information. Confidential Information includes, but is not limited to, information about GRI's sales, operations, business, personnel matters, the identity of GRI's top-performing employees, hiring criteria, pricing and cost structure of GRI's products and services, client or potential client identities, client relationship histories, and training techniques.

119.    Rorvig misappropriated and/or misused GRI Confidential Information about GRI's top-performing employees in the Wisconsin/Illinois Region—employees whom he managed or

24

who directly worked with him—to solicit them to Nations with competitive, lucrative offers. This Confidential Information included data about their compensation, training, and the business goodwill and contacts developed in the region through GRI's resources, promotional strategies and operations.

120.    Rorvig's misappropriation and/or misuse of GRI Confidential Information is a breach of the explicit terms of the Rorvig Agreement, and GRI has suffered—and continues to suffer—damages as a result of this breach.

**WHEREFORE**, GRI respectfully requests that this Court enter judgment in its favor and against Rorvig, award GRI compensatory damages in an amount in accord with the proofs, but in any event, no less than $100,000 for Rorvig's misappropriation and/or misuse of GRI's Confidential Information, enter an injunction enjoining Rorvig from using, possessing or accessing GRI Confidential Information, award GRI its reasonable attorney's fees and costs associated with bringing this action, and award GRI any other and further relief this Court deems just and equitable.

### COUNT II – BREACH OF CONTRACT (NON-SOLICITATION OF EMPLOYEES)
### (Against Rorvig)

121.    GRI incorporates and realleges Paragraphs 1 through 120 as if fully set forth herein.

122.    The Rorvig Agreement is a valid and enforceable contract that imposes upon Rorvig certain contractual obligations and restrictive covenants, including the Non-Solicitation Obligation.

123.    GRI has performed all of its obligations under the Rorvig Agreement or those obligations are excused under the circumstances.

124.    Pursuant to the terms of the Rorvig Agreement, during the course of Rorvig's employment and for 24 months thereafter ("Restricted Period"), Rorvig could not and cannot, directly or indirectly, solicit or attempt to solicit, entice, recruit influence, persuade, induce,

promote, facilitate, encourage or assist in the solicitation of any Person employed/engaged by GRI to end their employment with GRI and/or to join him in any new business venture or business relationship with which he becomes employed or affiliated.

125.    Pursuant to the terms of the Rorvig Agreement, Rorvig may not supervise, manage, or oversee the work of any former GRI employee during the Restricted Period.

126.    Pursuant to the explicit terms of the Agreement, in the event Rorvig breaches the Non-Solicitation Provision of the Rorvig Agreement, he shall be liable to GRI for each employee solicited in the amount of Fifty Thousand Dollars ($50,000) as liquidated damages.

127.    As alleged above, Rorvig breached the Non-Solicitation Provision of the Rorvig Agreement, in part or wholly *while he was still employed by GRI*, by soliciting or helping to solicit at least 15 GRI employees from the Wisconsin/Illinois Region of GRI's Midwest Division to leave GRI and join Nations with him. As noted above, each of these individuals resigned from GRI around the same time or shortly after Rorvig did, with contemporaneous correspondence showing that Rorvig's team members secretly met at Rorvig's house to discuss moving to Nations to work with Rorvig and Dowling. Rorvig managed or worked with these former GRI employees in the Wisconsin/Illinois Region, and on information and belief, he manages or works directly with many of them at Nations in its Midwest Region. Given the number of employees supervised by Rorvig and the timing of their resignations, Rorvig improperly solicited his team members and others he worked with in the Wisconsin/Illinois Region to depart GRI and join Nations.

128.    Furthermore, since joining Nations, Rorvig has continued to breach the Non-Solicitation Provision of the Rorvig Agreement by personally soliciting more current GRI employees, including as least four branch managers in the Wisconsin/Illinois Region, one of whom (Burns) resigned to join Nations. As a result of this conduct, GRI has suffered irreparable harm for

which there is no adequate remedy at law. Such irreparable harm will continue unless Rorvig is enjoined as requested in the Prayer for Relief below.

**WHEREFORE**, GRI respectfully requests this Court enter judgment in its favor and against Rorvig, award GRI compensatory damages in an amount in accord with the proofs, but in any event, no less than $100,000 for Rorvig's unlawful solicitations, award GRI liquidated damages in the amount of $50,000 for each of Rorvig's unlawful solicitations, enter an injunction enjoining Rorvig from soliciting GRI employees until after December 23, 2023, award GRI its reasonable attorney's fees and costs associated with bringing this action, and award GRI any other and further relief this Court deems just and equitable.

## COUNT III – BREACH OF FIDUCIARY DUTY
### (Against Rorvig)

129.    GRI incorporates and realleges Paragraphs 1 through 128 as if fully set forth herein.

130.    At all relevant times prior to his resignation from GRI, Rorvig was an employee of GRI.

131.    At all relevant times prior to his resignation from GRI, Rorvig owed to GRI fiduciary duties of trust, loyalty, full disclosure, and good faith with respect to all matters within the scope of his agency.

15596769 v3

132.    Rorvig, while still employed by GRI, solicited his team members and other GRI employees to terminate their employment with GRI and to join Nations. Rorvig's breach of his fiduciary duties by improperly soliciting GRI's employees *while still employed by GRI* was willful and intentional, as evidenced by contemporaneous emails showing that Rorvig's team members met secretly at his house to discuss joining Rorvig and Dowling at Nations. This particular meeting occurred on November 23, 2021; Rorvig resigned from GRI on December 23, 2021. Moreover, another email from before Rorvig's resignation, dated December 14, 2021, showed that another member of Rorvig's team, Richard Cohen, was "excited to move to Nations Bank in January with Eirik [Rorvig]'s team."

133.    Rorvig's wrongful conduct has caused immediate, substantial, and ongoing injury to GRI, including economic harm in the form of the disruption and damage to GRI's relationships with its valued employees, the continuing loss of its competitive position, loss of market share, and lost profits.

**WHEREFORE**, GRI requests this Court enter judgment in its favor and against Rorvig, award GRI compensatory damages in an amount in accord with the proofs, award GRI its reasonable attorney's fees and costs incurred in bringing this action, order Rorvig to disgorge his wrongful gains in an amount to be determined at trial, award GRI an additional amount constituting forfeiture of any and all compensation in any form that Rorvig received or earned during, or that was otherwise related to, all periods in which he was breaching his fiduciary duties to GRI, award GRI punitive damages, award GRI prejudgment interest, and any other and further relief this Court deems just and equitable.

### COUNT V – TORTIOUS INTERFERENCE WITH A CONTRACT
### (Against Nations)

134.    GRI incorporates and realleges Paragraphs 1 through 133 as if fully set forth herein.

135.    The Rorvig Agreement is a valid and enforceable agreement between GRI and Rorvig.

136.    GRI has similar valid and enforceable employment agreements with the other former GRI employees mentioned herein, including Dowling.

137.    At all times, Nations was aware that the Rorvig Agreement was a valid and enforceable contract.

138.    At all times, Nations was aware that that GRI had valid and enforceable contracts with its other former employees, including Dowling.

139.    At a minimum, Nations was on notice of these contracts upon receiving the Reminder Letter GRI sent to Dowling on May 25, 2021.

140.    Nations induced Dowling, Rorvig and other former and current GRI employees to breach their employment agreements with GRI by soliciting GRI employees and/or misusing GRI Confidential Information to solicit GRI employees.

141.    Specifically, Nations induced Dowling to breach his employment agreement with GRI to solicit Rorvig and others to come to Nations.

142.    Specifically, Nations induced Rorvig to breach the Rorvig Agreement and/or his fiduciary duties to GRI by soliciting GRI employees to resign from GRI and join him at Nations.

143.    Specifically, Nations continues to induce Dowling, Rorvig and other former and current GRI employees to solicit GRI employees to resign from GRI and join Nations, in violation of their contractual obligations to GRI.

144.    Specifically, GRI is aware that Dowling, Rorvig and Dorece, as agents and employees of Nations and due to Nations' inducement, continue to solicit GRI employees in violation of their Non-Solicitation and Confidentiality Obligations to GRI.

145.     Nations has induced and benefited from Rorvig's breach of the Rorvig Agreement.

146.     Nations has induced and benefited from the other former GRI employees' breach of their Non-Solicitation and Confidentiality Obligations to GRI.

147.     Nations' wrongful conduct has caused immediate, substantial, and ongoing injury to GRI, including economic harm in the form of the disruption and damage to GRI's relationships with its valued employees, the continuing loss of its competitive position, loss of market share, and lost profits.

148.     As a result of this conduct, GRI has suffered irreparable harm for which there is no adequate remedy at law. Such irreparable harm will continue unless Nations is enjoined as requested in the Prayer for Relief below.

**WHEREFORE**, GRI respectfully requests this Court enter judgment in its favor and against Nations, award GRI compensatory damages in an amount in accord with the proofs, but in any event, no less than $100,000 for Nations' tortious interference, award punitive damages, award GRI its reasonable attorney's fees and costs associated with bringing this action, and award GRI any other and further relief this Court deems just and equitable.

### COUNT VI – TORTIOUS INDUCEMENT OF BREACH OF FIDUCIARY DUTY
### (Against Nations)

149.     GRI incorporates and realleges Paragraphs 1 through 148 as if fully set forth herein.

150.     Nations colluded with Rorvig, while Rorvig was still employed by GRI, to solicit employees to resign from GRI and join Nations.

151.     Specifically, Dowling, as Nations' Midwest Regional Manager, colluded with Rorvig, while Rorvig was still employed by GRI, to divulge GRI Confidential Information about GRI's top-performing employees in the Wisconsin/Illinois Region and/or Midwest Division,

including but not limited to their compensation and other personnel related information, to solicit GRI employees to resign and join Nation through competitive job offers.

152.    Contemporaneous records of meetings and conversations between Dowling and Rorvig show that this collusion occurred before Rorvig resigned from GRI on December 23, 2021. For example, one email dated November 24, 2021 with the subject "Factors to Decision → New Mortgage Company" details how Rorvig had "[g]reat conversations with Tim Dowling @ Nations Banks" and that Rorvig met with his team at his home the previous day to solicit them all to join him at Nations. (Ex. G.)

153.    Nations, through Dowling, induced and/or participated in Rorvig's breach of fiduciary duty in divulging and misusing GRI Confidential Information and soliciting GRI employees to resign while he was still employed by GRI.

154.    Nations obtained the benefit resulting from Rorvig's breach of fiduciary duty in that 12 key employees from GRI's Midwest Region all resigned in short succession and joined Nations shortly after Rorvig resigned.

155.    The addition of these GRI employees to Nations unfairly and improperly transfers a substantial section of GRI's Midwest operations, local goodwill and contacts to Nations.

156.    Nations' wrongful conduct has caused immediate, substantial, and ongoing injury to GRI, including economic harm in the form of the disruption and damage to GRI's relationships with its valued employees, the continuing loss of its competitive position, loss of market share, and lost profits.

157.    As a result of this conduct, GRI has suffered irreparable harm for which there is no adequate remedy at law. Such irreparable harm will continue unless Nations is enjoined as requested in the Prayer for Relief below.

**WHEREFORE**, GRI respectfully requests this Court enter judgment in its favor and against Nations, award GRI compensatory damages in an amount in accord with the proofs, but in any event, no less than $100,000 for Nations' tortious inducement, award punitive damages, award GRI its reasonable attorney's fees and costs associated with bringing this action, and award GRI any other and further relief this Court deems just and equitable

### COUNT VII - VIOLATION OF DTSA
### (Against Rorvig)

158.    GRI realleges and incorporate Paragraphs 1 through 157 as if fully set forth herein.

159.    During the course of his relationship with GRI, Rorvig was provided access to substantial amounts of GRI Confidential Information, including the Confidential Information identified in Paragraphs 22, 28, 33 and 118.

160.    This information is not available to the general public and is closely guarded by GRI.   GRI keeps such information strictly confidential in order to protect and maintain its competitive advantage.   The economic value of this information is over $1,000,000.

161.    GRI Confidential Information, including the Confidential Information identified in Paragraphs 22, 28, 33 and 118, is a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq*. ("DTSA"), because the information is not generally known outside of GRI; the information is not generally known by employees and others involved in GRI's business except for those who need the information to perform their job function; GRI has taken reasonable measures to guard the secrecy of the information; the information is of great value to GRI; GRI invested significant amounts of time and money in developing the information; the information cannot easily be acquired or duplicated by others; and because GRI uses the information in its business.

162.     Rorvig was legally and contractually obligated to return GRI Confidential Information to GRI when he resigned from GRI on December 23, 2021.

163.     Rorvig knew that he was legally and contractually obligated to not use GRI Confidential Information after he resigned from GRI on December 23, 2021.

164.     Unfortunately, Rorvig ignored (and continues to ignore) his obligations to GRI and misappropriated GRI's Confidential Information after he resigned from GRI on December 23, 2021.

165.     In addition and based upon information and belief, Rorvig engaged in other acts of misappropriation that will be revealed through discovery.

166.     Unless restrained, and based upon the activity described above, Rorvig will continue to use, divulge, and/or disclose GRI Confidential Information.

167.     It is axiomatic that if Rorvig continues to possess GRI Confidential Information, then Rorvig has no intention of complying with the DTSA.

168.     Consequently, Rorvig's actions constitute the actual or threatened misuse of GRI Confidential Information.  Injunctive relief against Rorvig is therefore appropriate.

169.     Naturally then, GRI requests an order enjoining Rorvig from accessing, using, or possessing GRI Confidential Information.

170.     GRI also requests an order requiring Rorvig to return any and all GRI Confidential Information in his possession, custody or control to GRI as provided by 18 U.S.C. § 1836(3)(A)(ii).

171.     In addition, GRI has incurred significant damages as a result of Rorvig's misappropriation of GRI Confidential Information.

15596769 v3

172.    Rorvig's actions have also damaged GRI's goodwill, reputation, and legitimate business interests.  GRI's damages, described above, are well in excess of 100,000.00, and GRI seeks monetary and economic damages provided by 18 U.S.C. § 1832 *et seq*.

173.    Finally, Rorvig's misappropriation of GRI Confidential Information has been willful and malicious.

174.    As a result, GRI is entitled to recover its attorneys' fees and punitive from Rorvig.

**WHEREFORE**, GRI respectfully requests this Court enter judgment in its favor and against Rorvig, enter an injunction enjoining Rorvig from using, possessing, or accessing GRI Confidential Information, enter an order requiring Rorvig to return all GRI Confidential Information in Rorvig's possession, custody or control to GRI, award GRI compensatory damages in an amount no less than $100,000, award GRI punitive damages, award GRI its reasonable attorney's fees and costs associated with bringing this action, and award GRI any other and further relief this Court deems just and equitable.

### COUNT VII - VIOLATION OF WTSA
### (Against Rorvig)

175.    GRI realleges and incorporates paragraphs 1 through 174 as if fully set forth herein.

176.    During the course of his relationship with GRI, Rorvig was exposed to substantial amounts of GRI Confidential Information, including the Confidential Information identified in Paragraphs 22, 28, 33 and 118.

177.    This information is not available to the general public and is closely guarded by GRI.  GRI keeps this information strictly confidential in order to maintain a competitive advantage over its competitors.

178.    This information is considered a trade secret under the Wisconsin Trade Secrets Act ("WTSA"), Chp. 134.90/et al., because GRI derives independent economic value from this

information not being generally known to the public, the information is not readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

179.    The economic value of the GRI trade secrets/Confidential Information that Rorvig had access to and misappropriated is over $1,000,000.

180.    Rorvig has misappropriated GRI trade secrets.

181.    Based upon information and belief, Rorvig also engaged in other acts of misappropriation that will be revealed through discovery.

182.    Injunctive relief is therefore appropriate, and GRI requests that this Court enter an order enjoining Rorvig from using, possessing, or accessing any GRI Confidential Information and from disclosing GRI Confidential Information to anyone not authorized to receive the Confidential Information.

183.    GRI also requests that this Court enter an order requiring Rorvig to return any and all GRI Confidential Information.

184.    GRI has incurred significant damages as a result of Rorvig's misappropriation of GRI Confidential Information.

185.    Rorvig's actions have also damaged GRI's goodwill, reputation, and legitimate business interests. GRI's damages, described above, are well in excess of 100,000.00, and GRI seeks monetary and economic damages provide by the WTSA.

186.    Finally, Rorvig's misappropriation of GRI Confidential Information has been willful and malicious. As a result, GRI is entitled to recover its attorneys' fees and punitive damages from Rorvig.

**WHEREFORE**, GRI respectfully requests this Court enter judgment in its favor and against Rorvig, enter an injunction enjoining Rorvig from using, possessing, or accessing GRI Confidential Information, enter an order requiring Rorvig to return all GRI Confidential Information in Rorvig's possession, custody or control to GRI, award GRI compensatory damages in an amount no less than $100,000, award GRI punitive damages, award GRI its reasonable attorney's fees and costs associated with bringing this action, and award GRI any other and further relief this Court deems just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Guaranteed Rate, Inc. respectfully requests that the Court grant the following relief in favor of GRI and against Defendants (without waiving or limiting any other relief that may be available to GRI):

(a) Enter a judgment in favor of GRI and against Defendants on all Counts;

(b) Enter an Order preliminarily and permanently enjoining Defendants from directly or indirectly using, transferring, copying, or disclosing to any individual or entity, any GRI Confidential Information (including, but not limited to, any and all information relating to, evidencing or derived in whole or in part from information about GRI's employees' compensation, training, operations, business, sales, the identity of GRI's top-performing employees, hiring criteria, or the pricing and cost structure of GRI's products and services) or from otherwise violating the Confidential Information Provisions of the Rorvig Agreement or any other GRI employee Agreement;

(c) Enter an order requiring Defendants to return any and all Confidential Information in Defendants' possession, custody, or control; to immediately turn over and deliver

to GRI, and permanently uninstall and delete from each of their respective computers and other information storage media and devices, all GRI Confidential Information and all other property of GRI, however stored or maintained, and all paper and electronic copies thereof, including without limitation any and all information related to, evidencing, or derived in whole or in part from information about GRI's customers;

(d) Enter an order requiring that Defendants immediately cease and desist from directly or indirectly soliciting any GRI employees to leave their employment with GRI;

(e) Enter an order requiring Defendants to disgorge any profits they have a received as a result of their wrongful acts, including all compensation Defendants received during the period in which Rorvig breached fiduciary duties while employed by GRI and Nations induced his breach of fiduciary duties while employed by GRI;

(f) Award monetary damages to GRI for those claims for which monetary damages are available in this proceeding in an amount to be proven at trial;

(g) Award GRI its attorneys' fees and all costs and expenses related to this action;

(h) Award GRI punitive damages; and

(i) Such other and further relief as the Court deems just and appropriate.

## **JURY DEMAND**

GRI demands a jury trial on all issues so triable.

DATED: May 4, 2022

Respectfully submitted,

GUARANTEED RATE, INC.


By: s/J. Scott Humphrey_____
One of Its Attorneys

J. Scott Humphrey
Katie Burnett
**BENESCH, FRIEDLANDER, COPLAN &
Aronoff LLP**
71 South Wacker Drive
Suite 1600
Chicago, IL 60606-4637
Telephone: 312-212-4940
shumphrey@benesch.com
kburnett@benesch.com

*Counsel for Guaranteed Rate, Inc.*