UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUARANTEED RATE, INC., | ) |
| | ) Case Number: 22 CV 2342 |
| | ) |
| Plaintiff, | ) Judge: Robert W. Gettleman |
| | ) |
| v. | ) Magistrate Judge: Jeffrey Cummings |
| | ) |
| EIRIK RORVIG and NATIONS LENDING CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**GUARANTEED RATE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY AND FOR EXTENSION OF TIME TO OPPOSE DEFENDANTS' MOTION TO DISMISS**

Plaintiff Guaranteed Rate, Inc. ("Plaintiff" or "GRI") respectfully submits this Reply in Support of its Motion for Leave to Conduct Jurisdictional Discovery ("Motion") and for an Extension of Time to Oppose Defendants' Motion to Dismiss. In support thereof, GRI states as follows:

**INTRODUCTION**

GRI's First Amended Complaint ("Complaint") alleges an abundance of examples in which Nations Lending Corporation ("Nations") targeted its tortious activities to Illinois. Specifically, GRI alleges that Nations encouraged Eirik Rorvig ("Rorvig") and Timothy Dowling ("Dowling") to solicit their former GRI colleagues and other GRI employees to join Nations and help Nations expand its footprint in the Midwest. These actions not only tortiously interfered with GRI's Illinois-based agreements with Rorvig and Dowling (and, potentially, other GRI employees) but also induced Rorvig and Dowling to breach the fiduciary duties each owed GRI. Consequently, Nations' activities caused GRI to lose a significant number of its employees from its Midwest and Illinois Divisions and caused (and continues to cause) severe business and

1

operation disruption to GRI in Illinois.[1] At the same time, Nations benefitted from these tortious actions in Illinois.

Defendants move to dismiss GRI's Complaint for lack of personal jurisdiction, citing declarations of Rorvig and Justin Sopko ("Sopko") as "proof" that the Court does not possess jurisdiction over Nations. In response, GRI seeks to test the veracity of the statements contained in these declarations, and explore the related issues raised in Defendants' motion to dismiss, through limited jurisdictional discovery. Nations and Rorvig, however, wish to have their affidavits and alleged "facts" go untested. Put another way, Defendants contend that targeted jurisdictional discovery should not be allowed even though they opened the door for such discovery when they filed their motion to dismiss and supporting declarations in a transparent attempt to obfuscate the facts. Defendants' Response to GRI's Motion ("Response") attempts to support this obfuscation by taking GRI's allegations out of context, conflating GRI's allegations against Rorvig with its allegations against Nations, and misstating the law and applicable legal standard.

In truth, the standard for jurisdictional discovery is a relatively low standard that GRI easily meets. More specifically, GRI is entitled to jurisdictional discovery because, as explained in its Motion, GRI can (and does) establish a *prima facie* case for personal jurisdiction, the factual record is ambiguous and unclear, and GRI's proposed discovery (attached as Exhibit A to Dkt. 19) is narrowly targeted to obtaining facts relevant to personal jurisdiction. For these reasons, the Court should grant GRI leave to issue the proposed jurisdictional discovery to Defendants. In doing so, this Court should also grant GRI's request that all motions to dismiss

---

[1] For example, GRI recently learned that another loan officer, Amy Pinkerton, resigned from GRI to work under Richard Demonica ("Demonica") at Nations. Demonica worked for GRI in Illinois prior to his resignation in May 2022. *See* Exhibit 1, which reflects Demonica's address in Huntley, Illinois.

be heard *after* the close of jurisdictional discovery because personal jurisdiction is a threshold issue that must resolved before all others.

## ARGUMENT

### I. GRI Is Entitled to Jurisdictional Discovery.

GRI meets the *prima facie* prerequisite for jurisdictional discovery and, as such, this Court should grant GRI's request for leave to issue its proposed discovery. *Esquivel v. Airbus Americas, Inc.*, 1:20-CV-07525, 2021 WL 4395815, at *2 (N.D. Ill. May 3, 2021) (citing *Cent. States, Se. & Sw. Areas Pension Fund*, 440 F.3d 870, 877 (7th Cir. 2006)). The standard for jurisdictional discovery is low. At this stage, GRI does not need to conclusively prove that jurisdiction exists. Instead, GRI only needs to show that jurisdiction <u>might</u> exist. *Esquivel*, 2021 WL 4395815, at *2 (emphasis in original). Moreover, courts grant jurisdictional discovery when the plaintiff demonstrates that the factual record is ambiguous or unclear on the issue of jurisdiction. *JT's Frames, Inc. v. Casares*, 16-CV-2504, 2018 WL 835225, at *3 (N.D. Ill. Feb. 13, 2018). Here, GRI has both established a *prima facie* case of specific personal jurisdiction (i.e. a likelihood that jurisdiction over Nations exists) and that the factual record is ambiguous or unclear with respect to the Court's jurisdiction over Nations. For these reasons, the Court should grant GRI's request for leave to issue its proposed jurisdictional discovery. (*See* Dkt. 19-1.)[2]

### A. GRI Meets the *Prima Facie* Standard for Jurisdictional Discovery.

For the Court to have specific personal jurisdiction over Nations, GRI must show (and it can show) that Nations purposefully and intentionally directed its tortious activities at Illinois and that Nations had knowledge that the effects would be felt (i.e. GRI would be injured) in

---

[2] Defendants based their motion to dismiss for lack of personal jurisdiction on specific jurisdiction, and accordingly, GRI based its Motion on specific personal jurisdiction. GRI is not waiving the general jurisdiction argument and will assert general jurisdiction over Nations if the facts elicited from jurisdictional discovery establish general jurisdiction.

3

15974590 v2

Illinois. *Felland v. Clifton*, 682 F.3d 665, 674–75 (7th Cir. 2012) (citing *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010) and *Calder v. Jones*, 465 U.S. 783 (1984) for "provid[ing] useful contours in conducting the purposeful-direction analysis in a tort case."); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). GRI did this by alleging: (1) Dowling is located in Illinois, and Nations tortiously interfered with GRI's Illinois employment agreement with Dowling; (2) Rorvig had meetings with Dowling (an Illinois resident), after Dowling joined Nations, about soliciting and moving other GRI employees to Nations in violation of both of their Illinois employment agreements with GRI; (3) Nations encouraged Rorvig and Dowling to solicit team members and other GRI employees, including those from Illinois, to resign from GRI and join Nations; (4) Nations encouraged Rorvig and Dowling to breach their fiduciary duties to GRI in order to solicit GRI employees to resign from GRI and join Nations; (5) Rorvig and Dowling specifically solicited Illinois residents (Meredith Richardson, Richard Cohen, and Katie Dorece), with Nations' encouragement, to leave GRI for Nations; (6) Richard Cohen, an Illinois resident, primarily works on Illinois business for Nations; (7) Rorvig and Nations both possess Illinois licenses; (8) Nations may have an office in Illinois; (9) Rorvig's team at Nations targets and services Illinois residents; and (10) Rorvig's team at Nations advertises itself as available to service Cook County, Illinois residents. (Dkt. 6 ¶¶ 47, 49, 51-55, 58-63, 65, 86-87, 95, 130, 134, 136-142, 148-154; Dkt. 14-1 at 7, 13.; Dkt. 19 at 7.)

These actions, all of which are tied to Illinois, caused GRI to lose a significant number of its employees from its Midwest Division and caused (and continues to cause) severe business and operational disruption to GRI in Illinois. (Dkt. 6 ¶ 96; Dkt. 19 at 7.) Meanwhile, Nations benefitted from its tortious actions in Illinois. (Dkt. 19 at 7-8.) In other words, Nations purposely directed its tortious activities at Illinois, and GRI's injuries arose from Nations'

Illinois activities. These allegations are more than sufficient to establish a *prima facie* showing of the Court's personal jurisdiction over Nations. *See Home Point Fin. Corp. v. Lane*, 6:20-CV-1819-CEM-EJK, 2021 WL 2875897, at *5-6 (M.D. Fla. May 20, 2021) (overruling defendant's personal jurisdiction objections because defendant directed communications to employees in the forum state for the purpose of unlawfully raiding plaintiff's forum state employees); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-81 (1984) (defendant's contacts with the forum state were sufficient for personal jurisdiction where defendant "continuously and deliberately exploited the [state's] market"); *Calder*, 465 U.S. at 789-90 (personal jurisdiction established where defendants committed an intentional tort outside the forum state but expressly aimed their misconduct at the forum state); *Trading Techs. Inter., Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 1220013, at *4 (N.D. Ill. Mar. 28, 2011) (evidence that the defendants were "receiving the benefits of the sales… is more than 'colorable' and sufficient to justify jurisdictional discovery"); *Insubuy, Inc. v. Cmty. Ins. Agency*, 10 C 3925, 2010 WL 4659483, at *2 (N.D. Ill. Nov. 9, 2010) ("[T]he Seventh Circuit has concluded that maintaining commercial websites that reach throughout the country can establish the willingness to do business with Illinois residents.") (citing *Illinois v. Hemi Group LLC*, 622 F.3d 754, 760 (7th Cir. 2010)).

  Defendants attempt to distract the Court from GRI's damning allegations of Nations' tortious activities—including Nations' encouragement of Rorvig and Dowling to solicit GRI employees in violation of both their GRI agreements and the fiduciary duties owed to GRI—by emphasizing that Rorvig was a GRI employee in Wisconsin and Dowling is not a named defendant. Nations takes this approach of separating jurisdictional-related facts with the hope of diminishing their importance. Yet, courts are to consider personal jurisdiction facts in the aggregate, rather than separately. *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d

1353, 1361 (7th Cir. 1996) ("[B]y discussing its contacts with [the forum state] in isolation and suggesting that none alone establishes the requisite minimum contacts, [defendant] fails to appreciate that the minimum contacts inquiry is one that examines the totality of the circumstances."). When read together instead of in isolation, the facts described above indicate that GRI establishes a *prima facie* case of personal jurisdiction over Nations.

Defendants also take GRI's statements out of context and claim that GRI should not be allowed to issue jurisdictional discovery due to GRI's "speculation and conjecture." Specifically, Defendants claim that GRI made "unsupported assertions of personal jurisdiction" when it pointed out that "Rorvig and/or Dowling may have solicited other GRI employees located in Illinois who chose not to leave GRI" and Rorvig's declaration "leav[es] open the possibility that other work may originate in Illinois." GRI made these statements in response to Rorvig's transparent hedging in his declaration, and GRI simply pointed out that Rorvig's declaration settles very little about Nations' activities in Illinois. Likewise, GRI's statement that Sopko's declaration "indicat[es] that [former GRI employees] may do a significant amount of business for Nations in Illinois or elsewhere" is meant to point out that Sopko's declaration raises additional questions. (Dkt. 19 at 7-8; Dkt. 23 at 5.) Consequently, GRI's statements are not "unsupported assertions of personal jurisdiction." Rather, GRI's statements are meant to highlight the ambiguities and questions created by the declarations, and why these questions and ambiguities must be resolved with jurisdictional discovery.

In addition, Defendants cite to an inapplicable case from Indiana to support their assertion that the Court should deny GRI leave to issue jurisdictional discovery. (Dkt. 23 at 6.) In *Brown v. Swagway, LLC*, a New York class-action plaintiff filed suit in Indiana against an Indiana-based manufacturer of hoverboards and a retailer incorporated in Delaware with its

15974590 v2

principal place of business in New York. *Brown v. Swagway*, LLC, 3:15-CV-588-JVB-CAN, 2016 WL 10749147, at *1 (N.D. Ind. Aug. 2, 2016), *objections overruled*, 3:15-CV-588 JVB, 2016 WL 10749148 (N.D. Ind. Sept. 22, 2016). The plaintiff moved for jurisdictional discovery into the retailer's contacts with Indiana, and the Court denied the plaintiff's motion. *Id.* at *3. In doing so, the Court pointed out that the plaintiff's *only* allegation of jurisdiction in Indiana was that the retailer passively sold products in the state. *Id*. at *1, 3. By contrast, GRI has alleged many more connections between Nations and Illinois. Nations' activities were specifically targeted to GRI's Illinois employees, GRI's Illinois agreements with those employees were violated by Nations, and ultimately, GRI's Illinois business operations was damaged by Nations.

For these reasons, the Court should grant GRI's request for leave to issue jurisdictional discovery. GRI has satisfied the low prerequisite for jurisdictional discovery and established a *prima facie* showing of the Court's personal jurisdiction over Nations.

### B. Nations' Contacts with Illinois Are Ambiguous And Unclear.

GRI is also entitled to jurisdictional discovery if it can show that the factual record is at least ambiguous or unclear on the jurisdiction issue. *Esquivel*, 2021 WL 4395815, at *2. Here, the factual record is ambiguous and unclear with respect to, at least, the following: (1) whether Nations conducts business in Illinois; (2) whether Nations solicited and encouraged the solicitation of GRI employees in Illinois; (3) whether Nations maintains an office in Illinois; and (4) whether Nations markets and/or advertises to potential or actual Illinois customers. These topics are, not surprisingly, some of the subjects that GRI intends to target with its jurisdictional discovery.

Defendants nevertheless claim that GRI failed to create "an actual factual dispute or a contradiction of the allegations" set forth in the Rorvig and Sopko declarations. GRI, however, is

not required at this stage to dispute or contradict every allegation set forth in Defendants' motion to dismiss in order to obtain jurisdictional discovery. *The Chicago Athenaeum: the Ctr. for Architecture, Art, & Urb. Stud. v. Int'l Awards, Inc.*, No. 18-CV-150, 2019 WL 10734740, at *3-4 (N.D. Ill. Jan. 16, 2019). Indeed, if that were the case then the purpose of jurisdictional discovery would be defeated. Rather, jurisdictional discovery is used when there are enough facts to establish the potential of personal jurisdiction and discovery is necessary in order for the court to make an informed decision/ruling on jurisdiction. In *Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*, a case cited by the Defendants, the Court granted jurisdictional discovery and aptly explained:

> The two affidavits… raise a few questions… [about] what [the defendant] did or did not do. But the Court considers these subject matters as ripe for jurisdictional discovery. As the District Court takes up the motion to dismiss for want of personal jurisdiction, it may 'weigh the affidavits,' but as the District Court evaluates whether the *prima facie* case standard has been satisfied, Plaintiffs are entitled to the resolution of all disputes concerning relevant facts presented in the record. There is clearly a dispute in the record here about what [the defendant] did or did not do…"

19 C 7675, 2021 WL 2433653, at *3 (N.D. Ill. June 15, 2021). Thus, courts err on the side of granting jurisdictional discovery so that the parties may flesh these issues out. *See also The Chicago Athenaeum*, 2019 WL 10734740, at *3 ("[T]he record is at least ambiguous or unclear on the jurisdiction issue, and therefore [the Court] will allow limited discovery into specific personal jurisdiction. The personal jurisdiction analysis is very fact-specific, and few facts concerning Defendants' connections to Illinois are known here."); *JT's Frames*, 2018 WL 835225, at *6 (allowing jurisdictional discovery where the "the factual record is ... ambiguous or unclear on the jurisdiction issue"); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015) (granting plaintiff's request for jurisdictional discovery into defendant's sales activities in the forum state because

"[o]f course, at this stage of the litigation, plaintiffs cannot be expected to possess such information without conducting discovery."); *Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014) (finding "that Plaintiffs have put forward evidence sufficient to cross the low hurdle for obtaining discovery to clarify the jurisdictional issues" raised by the defendants' affidavits); *United Wholesale LLC v. Traffic Jam Events*, No. 11 C 2637, 2012 WL 1988273, at * 2 (N.D. Ill. June 4, 2012) ("The Court concludes that limited jurisdictional discovery can shed light on, among other things, whether Defendant has shipped mailers to consumers located in Illinois, whether it has promoted products in Illinois," and similar ambiguous issues); *Parkside Med. Servs. Corp. v. Lincoln W. Hosp., Inc.*, No. 89 C 2233, 1989 WL 75430, at *1 (N.D. Ill. June 20, 1989) (allowing jurisdictional discovery where defendant's motion to dismiss was a factual attack upon the jurisdictional allegations of the complaint); *Lester-Washington v. Wal-Mart Stores, Inc.*, No. 11-CV-0568-MJR, 2011 WL 4738529, at *2 (S.D. Ill. Oct. 7, 2011) (allowing jurisdictional discovery where motion to dismiss was a factual attack upon the allegations of the complaint).

Defendants have, therefore, accomplished little more than pointing out that jurisdictional discovery should be issued because several facts are in dispute. For example, Defendants claim that the following statements from Rorvig's declaration are uncontradicted: (a) "none of the meetings or telephone calls alleged to have taken place between Nations Lending representatives and myself, related to my employment or potential employment with Nations Lending, took place in Illinois"; and (b) "The Amended Complaint references various meetings and conversations with former GRI employees. In so far as any such conversations occurred, none took place in Illinois." (Dkt. 14-1 at 3-4.) Yet these statements only speak to Rorvig's personal experience and do not include any details about the other individuals present for the meetings,

telephone calls, or conversations. They also do not resolve whether, as GRI alleges, Nations did business in Illinois or whether Nations encouraged Rorvig *and Dowling* to solicit GRI employees *in Illinois*. These questions are relevant to personal jurisdiction and must be clarified through jurisdictional discovery.

It should come as no surprise, then, that Defendants point to no cases that deny jurisdictional discovery due to a defendant's use of declarations or a plaintiff's failure to contradict or rebut the statements contained therein. Instead, Defendants cite as support *Rawlins v. Special Select Hosp. of Nw. Indiana, Inc.*, No. 13 C 7557, 2014 WL 1647182, at *5-6 (N.D. Ill. Apr. 23, 2014), a medical malpractice case, and *Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4-5 (N.D. Ill. Sept. 28, 2020), a manufacturing and requirements contract case. Neither case addresses employees or business being solicited in Illinois or related personal jurisdiction issues. Moreover, the remainder of the cases Defendants cite either allowed jurisdictional discovery, concluded that personal jurisdiction existed, or both. *See Diamond Servs.*, 2021 WL 2433653, at *3; *JT's Frames*, 2018 WL 835225, at *5; *Linkepic Inc v. Vyasil, LLC*, 146 F. Supp. 3d 943, 948 (N.D. Ill. 2015); *Parkside Med. Servs.*, 1989 WL 75430, at *1.

For these reasons, GRI's request for leave to conduct jurisdictional discovery should be granted. GRI has established that the factual record is unclear and ambiguous, and jurisdictional discovery is warranted.

**II.     GRI's Jurisdictional Discovery is Narrowly Tailored.**

GRI's jurisdictional discovery requests are narrowly tailored to obtain the facts that GRI needs to establish that this Court possesses jurisdiction over Nations. GRI's proposed discovery calls for the Defendants to identify or produce information regarding (1) the GRI employees that Nations or Rorvig contacted regarding employment with Nations, including their office and

10

residence locations; (2) customers serviced or products offered to potential customers in Illinois; (3) Nations employees, agents, and/or representatives located in Illinois or servicing Illinois customers; (4) revenues obtained from Illinois and how those revenues relate to Nations' total revenues; (5) the job responsibilities and compensation structures for Rorvig and Dowling; (6) how each of the employees listed in GRI's Complaint were contacted and by whom; and (7) marketing and advertising materials sent to potential or actual customers within Illinois. (Dkt. 19-1.) GRI also seeks to depose Rorvig and Nations pursuant to Fed. R. Civ. P. 30(b)(6) relating to these topics and the statements that Rorvig made in his declaration. (Dkt. 19-1 at 6-7.)

GRI's proposed discovery is relevant to the Court's assessment of jurisdiction and Nations' contacts with Illinois because GRI believes discovery will show, for example, whether Nations solicited GRI employees in Illinois of whom GRI does not yet have knowledge; whether Nations services customers or attempts to service customers in Illinois through the former GRI employees; whether Dowling and Rorvig were encouraged to recruit their former GRI colleagues to expand Nations' footprint in the Midwest, including Illinois; and/or whether Nations markets or advertises to customers in Illinois. If discovered, all of this information is relevant to Nations' contacts with Illinois and the Court's jurisdiction over Nations. *The Chicago Athenaeum*, 2019 WL 10734740, at *3; *Home Point*, 2021 WL 2875897 at *5-6.

Although Defendants claim that GRI's proposed discovery to Rorvig should not be allowed, it is the Defendants who put Rorvig at issue by making him a declarant for the purposes of contesting personal jurisdiction. (Dkt. 14 at 13-14.) (Dkt. 23 at 13.) Put another way, Defendants opened the door to discovery into Rorvig's declaration statements by using his statements to support their argument that the Court does not have personal jurisdiction over Nations. *See, e.g.*, *Gilman*, 2014 WL 1284499, at *6 ("Plaintiffs should have an opportunity to

depose [the affiant] regarding the scope of Defendants' business within the Northern District of Illinois to clarify the representations he made in his affidavits submitted in support of Defendants' motion to dismiss."). Consequently, by Defendants' own admission, Rorvig's statements are relevant to Nations' motion to dismiss for lack of personal jurisdiction and therefore subject to cross examination. Moreover, the information underlying Rorvig's declaration resides solely in the Defendants' possession, custody or control, and it would be inequitable and highly prejudicial to restrict GRI from issuing targeted discovery to Rorvig.

Defendants also take issue with GRI's requests dating from January 2021, because, Defendants claim, such requests have nothing to do with Rorvig's departure in December 2021. Defendants, however, attempt to conflate the claims against Nations with the claims against Rorvig. GRI requested information dating back to January 2021 because, in early 2021, Nations was soliciting and recruiting GRI's employees as well as attempting to interfere (or actually interfering) with GRI's contracts. (Dkt. 6 at 30, 72, 101, 137.) Also, GRI's proposed discovery calls for information from January 2021 through the present in only two instances: first, GRI requests revenue earned on loans originated in Illinois, and second, GRI requests advertisements and marketing materials sent to persons in Illinois. The information obtained from these discovery requests may show that Nations' tortious activities were targeted to Illinois in that Nations was attempting to expand its Midwest services through the solicitation of GRI employees and interference with GRI's contracts. GRI also requested such information from Rorvig because Rorvig may have knowledge of Nations' revenue and marketing activities. This is especially true because Rorvig was recruiting GRI employees to join Nations well before his departure at the end of 2021, and such information resides solely in the Defendants' possession, custody or control. (Dkt. 6 at 5, 43, 130, 150.)

Last, Defendants contend that GRI's request that Defendants' discovery responses be due within 14 days is unreasonable, and that the Defendants should have 30 days to object and respond to GRI's jurisdictional discovery. GRI has thus far received no cooperation from the Defendants related to establishing a schedule. When GRI contacted Defendants' counsel to inform them of GRI's intent to seek jurisdictional discovery and file a motion for leave, Defendants simply stated that they would object to both requests. As such, Defendants cannot now complain about GRI's proposed schedule or GRI's desire to have this matter resolved quickly. (*See* Dkt. 23 at 10, 13.) Nevertheless, if GRI's request for leave is granted, GRI is committed to working with the Defendants to devise a mutually amenable discovery schedule.

For these reasons, GRI's proposed jurisdictional discovery is narrowly tailored to elicit information that would support the Court's personal jurisdiction over Nations. GRI should be granted leave to issue such discovery to the Defendants.

### III.   The Court Should Postpone Ruling on Defendants' 12(b)(6) Motion to Dismiss.

The Court should resolve both the 12(b)(2) and 12(b)(6) motions to dismiss after GRI conducts jurisdictional discovery. *Arthur Pierson & Co., Inc. v. Provimi Veal Corp.*, 887 F.2d 837, 839 (7th Cir. 1989) ("[A] district court no doubt has substantial inherent power to control and to manage its docket.") There is no reason for the Court to expend its resources on resolving two separate motions to dismiss, and at the very least, the Court should resolve the threshold issue of personal jurisdiction prior to reaching the 12(b)(6) motion. *JT's Frames*, 2018 WL 835225, at *6.

Defendants contend that resolution of the 12(b)(6) motion should not be postponed until after the jurisdictional discovery is conducted due to the chance that the 12(b)(6) motion eliminates GRI's other claims against Nations. (Dkt 23 at 12.) To support this stance,

13

Defendants cite only to *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946 (N.D. Ill. 2015), where plaintiffs filed their motion for jurisdictional discovery *at the same time* as their response in opposition to defendants' motions to dismiss and the Court. *Id*. at 971. The Court treated the motion as part of plaintiffs' motions to dismiss responses and resolved all of the motions at one time. *Id*. at 973 & n.10.[3] Here, GRI filed its motion for jurisdictional discovery prior to its motions to dismiss responses so *Indag* is not wholly applicable here. Defendants point to no other authority mandating that the 12(b)(6) motions be granted while jurisdictional discovery is pending.[4]

It should come as no surprise, then, that many courts postpone resolution of 12(b)(2) and 12(b)(6) motions to dismiss until after the close of jurisdictional discovery when faced with similar procedural issues. *See Zurich Am. Ins. Co. v. Tangiers Int'l LLC*, 18 C 2115, 2018 WL 3770085, at *3 (N.D. Ill. Aug. 9, 2018) (directing the parties to engage in jurisdictional discovery and denying defendants' 12(b)(6) motion, stating "[t]he Court must resolve the jurisdictional issue before proceeding to the merits of the case"); *The Chicago Athenaeum*, 2019 WL 10734740, at *4 (granting plaintiff's motion for jurisdictional discovery and denying defendants' 12(b)(2) and 12(b)(6) motions to dismiss without prejudice to renewal following jurisdictional discovery); *United Wholesale*, 2012 WL 1988273, at *3 (granting plaintiff's

---

[3] The *Indag* Court, cited by Defendants, ultimately granted in part plaintiffs' request for jurisdictional discovery, dismissed the plaintiffs' complaint *without prejudice*, and granted plaintiffs *leave to replead*. *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 973 (N.D. Ill. 2015).

[4] Earlier in their Response, Defendants cite *Brown v. Swagway*, 2016 WL 10749147. In that case, the Court admonished the plaintiff for not seeking an extension of the motions to dismiss prior to briefing the motion for jurisdictional discovery, like GRI did in this case:

"Plaintiff could have sought an extension of time to respond to [defendant's] motion to dismiss until the undersigned could rule on the pending motion for discovery. Plaintiff did not. Instead, Plaintiff briefed the motion to dismiss in full… [J]urisdiction is a threshold matter that must be resolved before the Court has authority to address any other matters in this and every case before it." *Id*. at *1.

motion for jurisdictional discovery and denying defendant's motion to dismiss for lack of jurisdiction without prejudice and with leave to re-file after the close of jurisdictional discovery, if warranted). In doing so, other Courts emphasized that personal jurisdiction is a threshold issue that must be resolved prior to any 12(b)(6) motions to dismiss. *See JT's Frames*, 2018 WL 835225, at *6 (ordering jurisdictional discovery and dismissing defendants' 12(b)(2) and 12(b)(6) motions to dismiss without prejudice to their ability to renew following jurisdictional discovery); *id* ("Because the threshold issue of personal jurisdiction remains unresolved, the Court need not and should not reach the [] Defendants' Rule 12(b)(6) motion.").

This Court should likewise resolve Defendants' motions for lack of personal jurisdiction and failure to state a claim *after* it allows GRI to conduct its jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, Plaintiff Guaranteed Rate, Inc. respectfully requests that this Court enter an Order granting its motion for leave to conduct jurisdictional discovery and for an extension of time to oppose Defendants' motion to dismiss.

| | |
|---|---|
| Dated: August 5, 2022 | Respectfully submitted,<br>  /s/ J. Scott Humphrey  <br>J. Scott Humphrey<br>Katie Burnett<br>**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**<br>71 South Wacker Drive<br>Suite 1600<br>Chicago, IL 60606-4637<br>Telephone: 312-212-4940<br>shumphrey@beneschlaw.com<br>kburnett@beneschlaw.com<br><br>*Counsel for Guaranteed Rate, Inc.* |

15974590 v2

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 5, 2022, he served a copy of the foregoing on all counsel of record via electronic case filing procedures.

/s/ J. Scott Humphrey
*One of the Attorneys for Plaintiff*

15974590 v2