IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUARANTEED RATE, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 22 CV 2342 |
| ) | |
| v. ) | Judge Robert W. Gettleman |
| ) | Magistrate Judge Jeffrey Cummings |
| EIRIK RORVIG and NATIONS LENDING ) | |
| CORPORATION ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Guaranteed Rate, Inc. ("GRI") brings this seven-count action against defendants Eirik Rorvig ("Rorvig") and Nations Lending Corporation ("Nations") (collectively, "defendants"). Counts I, II, III, and VII against Rorvig allege breach of contract, breach of fiduciary duty, and violations of the Defend Trade Secrets Act, 18 U.S.C. § 1832, and Wisconsin Trade Secrets Act, Wis. Stat. § 134.90.[1] Counts V and VI against Nations allege tortious interference with contract and tortious inducement of breach of fiduciary duty, respectively. Plaintiff moves for leave to conduct jurisdictional discovery and an extension of time (Doc. 19) to oppose defendants' pending motion to dismiss all counts (Doc. 13, 14). The briefing schedule previously set on defendants' motion to dismiss has been suspended (Doc. 15). For the reasons stated below, plaintiff's motion (Doc. 19) is granted, but the court imposes certain limitations on plaintiff's proposed discovery requests.

**BACKGROUND**

Plaintiff GRI brought this action to stop defendants from allegedly "misusing GRI

---

[1] Plaintiff's amended complaint inexplicably contains two separate Count VIIs against Rorvig and no Count IV against anyone.

1

confidential information and systematically, methodically, and purposefully pilfering entire groups of GRI employees." Plaintiff is a residential mortgage loan lender organized under Delaware law, with its headquarters in Chicago, Illinois. Defendant Rorvig, a citizen of Wisconsin, worked for plaintiff from December 27, 2019, until his resignation on December 23, 2021. In January 2022, Rorvig began working at defendant Nations. Nations is an Ohio corporation, with its headquarters in Ohio.[2]

Plaintiff brings distinct but interconnected claims against defendants Rorvig and Nations. Plaintiff alleges that Rorvig misused plaintiff's confidential information to improperly solicit plaintiff's employees to resign and begin employment at Nations. Similarly, plaintiff alleges that Nations tortiously interfered with plaintiff's employee's contracts and induced plaintiff's employees to breach their fiduciary duties. Specifically, plaintiff claims that Nations knowingly and intentionally encouraged and induced former and current GRI employees, "including, but not limited to, Rorvig," to breach their obligations to plaintiff. Plaintiff claims that Nations has engaged in such conduct "since at least November 2021" but as recently as March 14, 2022.

On July 22, 2022, defendants moved to dismiss all plaintiff's claims. This motion remains pending before the court. As relevant to plaintiff's instant motion, defendants claim that the court lacks personal jurisdiction over Nations under Rule 12(b)(2).[3] Fed. R. Civ. Pro. 12(b)(2). Defendants assert that Nations is an Ohio corporation "with no alleged conduct directed at Illinois." Further, defendants assert that all the alleged activities in plaintiff's claims against Nations took place in Wisconsin, "with only incidental impact in Illinois insufficient to

---

[2] Plaintiff brings its claims against Nations before the court under its original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because it is a civil action between parties of diverse citizenship with an appropriate amount in controversy.

[3] Defendants do not dispute the court's personal jurisdiction over Rorvig, likely because Rorvig consented to exclusive jurisdiction of and venue in "the federal court located in Cook County, Illinois for the purposes of actions arising out of his employment with GRI and/or [his employment agreement with GRI]."

2

give rise to personal jurisdiction." They claim that "[t]here are no allegations that Nations knew that its alleged conduct against GRI would be felt in Illinois or that it was otherwise expressly aimed at Illinois."

In the instant motion, plaintiff argues that Nations' contact with Illinois is "more extensive" than defendants admit.[4] For example, Rorvig was on a Midwest-based team with an Illinois-based regional manager, Timothy Dowling ("Dowling"). Dowling ran plaintiff's Midwest Division from Schaumburg, Illinois, and McHenry County, Illinois. Plaintiff alleges that Rorvig and Dowling worked with encouragement from Nations to recruit employees from plaintiff's Midwest Division, which is based in Illinois and/or Wisconsin. Rorvig reported to Dowling until Dowling resigned from his position with plaintiff on May 14, 2021. After his resignation, Dowling began employment with Nations and allegedly worked with Rorvig to solicit employees from plaintiff, including "at least three GRI employees located in Illinois."

To further illuminate Nations' contacts with Illinois, plaintiff seeks jurisdictional discovery. Plaintiff requests, among other things, Nations' production of documents relating to "[c]ommunications with any current or former GRI employee located in Illinois, from January 1, 2022 to the present regarding employment, potential employment, or an affiliation with Nations." Plaintiff also requests "[d]ocuments reflecting the amount of revenue earned on loans originating in Illinois from 2021 to the present," and "[a]ll advertisements, marketing materials, and/or sales materials sent to any persons in the state of Illinois, or any advertisement, marketing material, and/or sales materials that was sent to or published in Illinois from January 2021 to the present." Plaintiff requests similar production from Rorvig, in addition to interrogatory responses from both defendants regarding similar information.

---

[4] In total, plaintiff's Midwest Division covers Illinois, Wisconsin, Michigan, Minnesota, Ohio, Kentucky, Missouri, Indiana, West Pennsylvania, North Dakota, South Dakota, Kansas, and Nebraska.

3

Further, plaintiff seeks to depose both defendants. Plaintiff generally seeks to question Rorvig "regarding jurisdictional discovery," but its questions for Nations are more specific. Plaintiff seeks to depose Nations regarding its "revenues received from each state in which Nations originates loans, including: the volume of loan origination for each state as it relates to total revenues"; its customers or clients in Illinois, as well as its services or products offered there; its reporting structure, especially as it relates to Rorvig and Dowling; its recruitment of certain individuals; and its marketing and advertising in Illinois, among other inquiries.

## LEGAL STANDARD

When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. See Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr., 536 F.3d 757, 761 (7th Cir. 2008). When the motion is based on written materials submitted by the parties, rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. See Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). Thus, the court accepts as true all well-pleaded facts in the complaint and resolves any factual disputes presented in the record in favor of the plaintiff. Id.

Personal jurisdiction is a court's authority to hale a defendant before it. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). A court's exercise of personal jurisdiction in a diversity case is limited by the applicable state statute and the federal Constitution. See Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010). Where, as in Illinois, the state long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, the state statutory and federal constitutional inquiries merge. Id., citing 735 Ill. Comp. Stat. 5/2–209(c). A merged inquiry allows a court to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with

4

[the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Daimler AG v. Bauman, 571 U.S. 117, 126 (2014) (internal quotations and citations omitted).

There are two kinds of personal jurisdiction: general and specific. General jurisdiction is available when the defendant's contacts with the forum state are "continuous and systematic," even if the issue before the court does not arise out of those contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Conversely, specific jurisdiction is appropriate only when the issue before the court arises out of the defendant's contacts with the forum. Id. at 414. Courts apply a three-part analysis to determine whether specific jurisdiction exists: (1) whether the defendant has "purposefully availed himself of the privilege of conducting business in the forum state" or "purposefully directed his activities at the state"; (2) whether the alleged injury has arisen from the defendant's forum-related conduct; and (3) whether the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice. See Felland v. Clifton, 682 F.3d 665, 673 (7th Cir. 2012) (internal quotations and citations omitted).

If the plaintiff can establish a "colorable" or prima facie showing of personal jurisdiction, the court has discretion to order limited discovery to allow plaintiff to uncover facts that might establish jurisdiction. See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000). Courts generally grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue. See Gilman Opco LLC v. Lanman Oil Co., No. 13-CV-7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014). While the standard is low, a plaintiff may not rely on "bare," "attenuated," or "unsupported assertions" of jurisdiction to justify discovery. Ticketreserve, Inc.

5

v. viagogo, Inc., 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009). Jurisdictional discovery is also unwarranted where the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction. Id. at 782–83.

## DISCUSSION

Because plaintiff maintains that the factual record is "not clear and [un]ambiguous" regarding jurisdiction over Nations, plaintiff seeks jurisdictional discovery. According to plaintiff, its proposed discovery focuses on Nations' contacts with Illinois and could be completed within the next 60 days. Defendants counter that plaintiff's motion is "groundless and unnecessary," as well as an "end-around to secure 'free' discovery to try to salvage insufficiently pled allegations." Defendants are primarily concerned that plaintiff has not met its burden to establish a prima facie case for personal jurisdiction and has failed to refute defendants' evidence regarding Nations' lack of contacts with Illinois.

The court evaluates each contention in turn, beginning with plaintiff's threshold case for jurisdictional discovery. Because the court finds that plaintiff is entitled to discovery, the court examines plaintiff's proposed discovery requests.

I. **Plaintiff's Prima Facie Case for Personal Jurisdiction**

Plaintiff claims that it is entitled to jurisdictional discovery because it has established a prima facie case of specific personal jurisdiction over Nations.[5] Plaintiff argues that Nations purposefully and intentionally directed its activities at Illinois residents, with knowledge that the effects would be felt in Illinois. Its injuries, according to plaintiff, arise from Nations' contacts with Illinois. Defendants primarily contest whether Nations' contacts are purposefully directed

---

[5] Plaintiff claims that it does not waive arguments or defenses related to general jurisdiction over Nations and instead suggests that jurisdictional discovery may show that Nations is subject to general personal jurisdiction. Defendants suggest otherwise. Because the court finds that plaintiff has established a prima facie case for specific personal jurisdiction, it does not resolve this dispute at this time.

at Illinois and whether plaintiff's injuries arise from Nations' forum-related conduct. Because, according to defendants, plaintiff has not established a prima facie case of specific personal jurisdiction over Nations, the court should deny jurisdictional discovery.

### a. Purposeful availment or purposefully directed activities

The first component of the court's inquiry into plaintiff's prima facie case of specific personal jurisdiction is whether defendant has purposefully availed itself of the forum state's benefits and protections or otherwise directed its activities toward the forum state.

Here, plaintiff alleges in its complaint that Nations purposefully directed its activities at Illinois residents. First, plaintiff argues that Nations' employees solicited Illinois residents and interrupted plaintiff's operations in Illinois. For example, Dowling is in Illinois, and plaintiff alleges that Nations tortiously interfered with plaintiff's employment agreement with Dowling. Moreover, before Rorvig resigned, Rorvig allegedly had meetings with Dowling regarding the solicitation and employment of other GRI employees to Nations. These employees include three Illinois residents, one of whom "primarily works on Illinois business." Further, this solicitation "caused and continue[s] to cause severe business and operation disruption" to plaintiff in its Midwest Division generally and Illinois specifically.

Next, plaintiff argues that defendants' Illinois licensure and advertisements show that Nations purposefully directed its activities at Illinois and benefited from such activities. Both Nations and Rorvig are licensed in Illinois. Moreover, Nations' Facebook page for its Monona, Wisconsin branch—managed by Rorvig—lists several of its recent closings, which include "several" customers located in Illinois, and "indicates that services are available in Illinois and Cook County, Illinois." Nations' website also advertises its services in Illinois. According to plaintiff, such marketing "indicates that Nations benefits from its tortious activities in Illinois."

The court agrees with plaintiff that Nations' licensure and marketing material is purposefully directed at Illinois and its residents. While defendants argue that plaintiff has not established that Nations "<u>intended</u> the allegedly tortious activities take place in Illinois," defendants overstate the court's inquiry into intent for specific personal jurisdiction purposes.[6] (Emphasis in original). It is enough for a defendant to "reach out" beyond their state by entering contractual relationships that "envision[ ] continuing and wide-reaching contacts" in the forum. <u>Walden v. Fiore</u>, 571 U.S. 277, 285 (2014), <u>citing</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 479–80 (1985). If a defendant intentionally engages in conduct that impacts the forum state, the conduct is "purposefully directed" at the forum state if the defendant has knowledge that the effects will be felt in that state. See <u>Felland v. Clifton</u>, 682 F.3d 665, 674–75 (7th Cir. 2012). The defendant does not need to particularly single out Illinois residents <u>because</u> they are from Illinois. <u>See</u>, <u>e.g.</u>, <u>uBID, Inc. v. GoDaddy Group, Inc.</u>, 623 F.3d 421, 428 (7th Cir. 2010).

### b.  Arising from forum-related conduct

Even if plaintiff has established Nations' contacts with Illinois, defendant counters that these contacts are "irrelevant" because the alleged harm does not arise from the allegedly tortious conduct. The court agrees with defendants that plaintiff must establish "a nexus" between Nations' alleged contacts with Illinois and Nations' allegedly tortious conduct to establish plaintiff's <u>prima facie</u> case for specific personal jurisdiction in Illinois.

The crux of defendant's argument is that plaintiff has focused on contacts that are ultimately unrelated to its alleged injuries. Even if, for example, Nations had minimal contacts

---

[6] In another example, defendants emphasize "that Nations Lending sought to hire GRI employees <u>because of</u> their Illinois connections." (Emphasis added). Further, defendants argue that "the fact that [Nations] maintains licensures to provide services in Illinois or that a few of the employees hired by [Nations] are based in Illinois . . . does not address whether [Nations] acted with the purposeful intent to direct the alleged tortious activities at Illinois."

with Illinois, licensure and advertising are unrelated to Nations' allegedly tortious activities. Defendants argue that these contacts are irrelevant to Nations' specific conduct in hiring former GRI employees, or working with Wisconsin-based Rorvig to allegedly exploit confidential information. Likewise, Nations' online display of its current sales activity in Illinois "says nothing about whether [Nations] has tortiously interfered with contracts, or induced Rorvig's alleged breach of fiduciary duty, in Illinois." (Emphasis in original).

Yet the court finds that defendants overlook several of plaintiff's assertions. Plaintiff claims that Nations' revenues and advertising in Illinois are relevant to its case against Nations because such contacts "may show that . . . Nations was attempting to expand its Midwest Services through the solicitation of GRI employees and interference with GRI contracts." In addition, plaintiff suggests that Nations encouraged Dowling, an Illinois resident, to solicit GRI employees in violation of his GRI agreement and fiduciary duties.

Admittedly, the court finds that plaintiff has arguably alleged only weak nexuses, but the court is required to take the facts in the light most favorable to plaintiff. As plaintiff reminds the court, the standard for a prima facie case for jurisdiction is low, and courts must consider personal jurisdiction facts under the totality of the circumstances. See Mid-Am. Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1361 (7th Cir. 1996) ("[B]y discussing its contacts with [the forum state] in isolation and suggesting that none alone establishes the requisite minimum contacts, [defendant] fails to appreciate that the minimum contacts inquiry is one that examines the totality of the circumstances."). Therefore, the court concludes that plaintiff has established a prima facie case of specific jurisdiction here. Given the evidence already described, this case is not based on unsupported assertions of jurisdiction.

        c.        **Traditional notions of fair play and substantial justice**

Defendants do not argue refute plaintiff's argument that personal jurisdiction in the instant case is based on traditional notions of fair play and substantial justice. The Supreme Court has indicated that this inquiry encompasses the forum's interest in adjudicating the dispute and the burden on defendant of appearing in the forum, among other factors. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–77 (1985).

### II. Defendants' Evidence Regarding Nations' Contacts

The next hurdle for plaintiff is addressing defendants' arguably affirmative evidence that refutes plaintiff's assertion of jurisdiction. Even where a plaintiff establishes a prima facie case of jurisdiction, it still must address defendants' affirmative evidence otherwise. Where the plaintiff can show that the factual record is ambiguous or unclear, the court has discretion to authorize jurisdictional discovery.

To counter plaintiff's allegations of jurisdiction in the instant case, defendants offer the declarations of Rorvig, Sam Ascher, and Justin Sopkio as evidence that Nations did not direct its activities toward Illinois. According to defendants, these declarations are fatal to plaintiff's prima facie case. Rorvig's declaration states, "My work as branch manager for Guaranteed Rate was located exclusively in Wisconsin." Moreover, Rorvig states that his work with Dowling originated out of Wisconsin, and Spoko asserts that several Nations employees "primarily work[]" in Wisconsin. The court, however, agrees with plaintiff that its (arguable) failure to rebut these allegations is not fatal to its case because plaintiff does not have to dispute every allegation in defendants' motion to dismiss. See Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc., 19 C 7675, 2021 WL 2433653, at *3–5 (N.D. Ill. June 15, 2021); The Chicago Athenaeum: The Ctr. for Architecture, Art, & Urb. Stud. v. Int'l Awards, Inc., No. 18-CV-150, 2019 WL 10734740, at *3–4 (N.D. Ill. Jan. 16, 2019).

Defendants also claim that plaintiff must create "an actual factual dispute or a contradiction of the allegations" to receive discovery, and plaintiff has not established such a dispute. Defendants cite JT's Frames, Inc. v. Casares, No. 16-CV-2504, 2018 WL 835225 (N.D. Ill. Feb. 13, 2018), and Parkside Med. Servs. Corp. v. Lincoln W. Hosp., Inc., No. 89 C 2233, 1989 WL 75430 (N.D. Ill. June 20, 1989), for support. In JT's Frames, the court allowed jurisdictional discovery when the defendant's affidavits "directly contradict[ed]" plaintiff's allegations. Id. at *5–6. In Parkside, the court allowed jurisdictional discovery when the defendant's motion to dismiss "becam[e] a factual attack" on the plaintiff's jurisdictional allegations. Id. at *1. These cases do not stand for defendants' asserted limitations and support plaintiff's case rather than hurt it.

Lastly, defendants argue that plaintiff "resorts to speculation and conjecture" to "fill [the] gap in building its prima facie case." As discussed in detail above, the court disagrees with defendants that plaintiff has failed to establish its prima facie case, which cannot be based on unsupported assertions of personal jurisdiction. Rather, the court agrees with plaintiff that much of the "speculation and conjecture" raised by plaintiff merely supports plaintiff's case that the jurisdictional record is ambiguous and jurisdictional discovery is warranted. As plaintiff indicates, it "seeks to test the veracity of statements contained in these declarations," and related issues, with jurisdictional discovery. The court agrees with plaintiff that the record remains ambiguous regarding: (1) whether Nations conducts business in Illinois; (2) whether Nations solicited and encouraged the solicitation of plaintiff's employees in Illinois; (3) whether Nations maintains an office in Illinois; and (4) whether Nations markets and/or advertises to potential or actual Illinois customers.

### III.     Jurisdictional Discovery Plan

11

While plaintiff claims that its proposed jurisdictional discovery is narrow and focused on Nations' contacts with Illinois, defendants quibble with certain of plaintiff's proposed discovery requests and urge the court to impose "substantial limits and guardrails" on plaintiff's "unbounded" proposed discovery. They argue that plaintiff's proposals are excessive and inappropriately seek merits information. According to defendants, it is excessive to: seek jurisdictional discovery from Rorvig at all; seek information from Nations about its revenue from services and customers in Illinois; and seek information from Nations about all its contacts with Illinois-based GRI employees, both current and former. Defendants also argue about timing. The court evaluates each contention.

First, defendants contest plaintiff's proposed requests (interrogatories, deposition, and production) that are directed toward Rorvig "with no limitations of any kind." As they note, Rorvig has not moved to dismiss for lack of personal jurisdiction; rather, Nations alone has made this request.[7] The court, however, finds that jurisdictional discovery from Rorvig is not excessive. The court agrees with plaintiff that defendants opened Rorvig to discovery when they made him a declarant for the purposes of contesting Nations' personal jurisdiction. See, e.g., Gilman Opco LLC v. Lanman Oil Co., No. 13-CV-7846, 2014 WL 1284499, at *1 (N.D. Ill. Mar. 28, 2014) ("Plaintiffs should have an opportunity to depose [the affiant] regarding the scope of Defendants' business . . . to clarify the representations he made in his affidavits submitted in support of Defendants' motion to dismiss."). Plaintiff's request is not "plainly an attempt to marshal discovery to use against him despite his pending motion to dismiss."

Next, defendants argue that it is excessive to seek discovery regarding Nations' services, customers, and revenues in Illinois. The court finds that such discovery is not excessive because

---

[7] Rorvig has moved to dismiss based on Fed. R. Civ. P. 12(b)(6).

12

it is related to plaintiff's argument that "Nations was attempting to expand its Midwest Services through the solicitation of GRI employees and interference with GRI contracts." This argument is pivotal to plaintiff's ability to establish jurisdiction over Nations.

Defendants also argue that it is excessive to allow plaintiff to request information about Nations and its employees' contact with any GRI employee regarding employment or potential employment. As defendants note, "Nations" is broadly defined and includes "any of its employees, anywhere in the county," regardless of whether they are former GRI employees or otherwise. The court disagrees with defendant that these requests go beyond the question of jurisdiction. Here, whether a Nations employee is a former GRI employee, or an Illinois resident, are irrelevant distinctions; plaintiff's claim that Nations solicited GRI employees in Illinois does not depend on where Nations' employees live or for whom they work, although such distinctions may be relevant to plaintiff's other arguments.

Lastly, defendants contest the relevant time period for jurisdictional discovery. They argue that plaintiff's proposed discovery requests "seek to poke at what Nations . . . may be up to now . . . rather than what Nations . . . allegedly did in Illinois and the supposed resulting harm that has befallen GRI to give rise to this lawsuit." Plaintiffs would demand documents reflecting Nations' revenue from loans that originated in Illinois, as well as advertisements and marketing to Illinois residents, from January 2021 to the present. Defendants argue that this discovery period is excessive because Rorvig did not resign from GRI until December 23, 2021, and information extending almost a year earlier is not relevant to the allegedly tortious conduct at issue. Plaintiff counters that "in early 2021, Nations was soliciting and recruiting GRI's employees as well as attempting to interfere (or actually interfering) with GRI's contracts."

The court agrees with defendants that the time period for jurisdictional discovery should

be limited. Rather than extending discovery from January 2021 until the present, the court concludes that plaintiffs should limit their discovery requests from the beginning of March 2021 to the end of March 2022. The discovery period should be limited in this manner to more closely align with plaintiff's allegations. In its amended complaint, plaintiff claims that Nations has engaged in the conduct at issue "since at least November 2021" and as recently as March 14, 2022. The court concludes that it is more than generous to extend discovery back to March 2021, given that Dowling resigned on May 14, 2021. It is excessive, however, to extend jurisdictional discovery to the present when jurisdiction is established upon filing. See Jason's Food, Inc. v. Peter Eckrick and Sons, Inc., 768 F.2d 189, 190 (7th Cir. 1985); Fidelity and Deposit Co. of Md. v. Sheboygan Falls, 713 F.2d 1261, 1266 (7th Cir. 1983).

## CONCLUSION

For the reasons set forth above, plaintiff's motion for leave to conduct jurisdictional discovery (Doc. 19) is granted. The parties are directed to complete jurisdictional discovery by November 11, 2022. At the close of jurisdictional discovery, the parties are directed to file a joint status report concerning the jurisdictional discovery. The court will set a briefing schedule on the pending motions in this case thereafter.

**ENTER:**

                                                              _____
                                                              **Robert W. Gettleman**
                                                              **United States District Judge**

**DATE: September 13, 2022**