**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GUARANTEED RATE, INC., | ) | |
| | ) | Case Number: 22 CV 2342 |
| | ) | |
| Plaintiff, | ) | Judge: Robert W. Gettleman |
| | ) | |
| v. | ) | Magistrate Judge: Jeffrey Cummings |
| | ) | |
| EIRIK RORVIG and NATIONS LENDING | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**GUARANTEED RATE, INC.'S RESPONSE TO NATIONS' MOTION FOR RELIEF
FOR VIOLATIONS OF THE AGREED CONFIDENTIALITY ORDER**

Plaintiff Guaranteed Rate, Inc. ("Plaintiff" or "GRI") respectfully submits this Response in opposition to Nations' Motion for Relief for Violations of the Agreed Confidentiality Order (the "Motion"). In support thereof, GRI states as follows:

**INTRODUCTION**

Since GRI filed its case against Nations in May 2022, Nations has made numerous unsubstantiated allegations that it either knew to be untrue or should have known to be untrue. Those statements include the following: (1) "the Court has no personal jurisdiction over Nations, an Ohio corporation with no alleged conduct directed at Illinois" (Dkt. 14 at 8); (2) "GRI's claims against Nations stem from activity allegedly taking place in Wisconsin with only incidental impact in Illinois" (Dkt. 14 at 8); (3) "[t]he only apparent ground for this case proceeding in Illinois is that GRI is located here" (Dkt. 14 at 13); (4) "GRI cannot plausibly allege (much less provide evidence) that Nations' efforts to hire Rorvig… were intended to impact Illinois or that his contacts with his GRI colleagues, almost all of whom are in Wisconsin, would have much, if anything, to do with

1

Illinois" (Dkt. 14 at 14); and (5) "no meetings or conversations with former GRI employees took place in Illinois" (Dkt. 23 at 6), among others. GRI's jurisdictional discovery refuted each of those claims. Even though GRI suspected from the outset that Nations had ties to Illinois, it is now clear that Nations has *significant* ties to Illinois, directed its recruitment activities at Illinois, and benefitted from those activities in Illinois. (*See* Dkt. 42 at 3.)

This Motion is evidence that Nations is still upset that it was caught in its misrepresentation of contacts with Illinois and the unscrupulous actions of its employees. Now, in a pattern that has become all-too-familiar, Nations is again lashing out against GRI. Put another way, whenever Nations' bad actions are spotlighted, Nations tries to change the narrative and distract the Court from the issues at hand. This time, Nations claims GRI "included information in a recent filing that was extracted from a document that Nations produced to GRI subject to the Order's confidentiality protection of 'attorneys-eyes only.'" (Dkt. 45 at 1.)

Notably, Nations does not allege that GRI published the *specific* information (or any specific information) contained in the alleged confidential document. Nor does Nations allege that GRI disclosed, disseminated, or published the confidential document in any pleading or public document. Instead, Nations takes issue with a single vague reference about its financial ties to Illinois in GRI's motion for leave to file an amended complaint ("Motion for Leave") and Second Amended Complaint ("Complaint"). (Dkts. 42, 42-1.)[1] The "offending" sentences are so vague that they do not reveal any "Attorneys Eyes Only" information and could not reasonably cause Nations any competitive harm—which is the purpose for an "Attorneys Eyes Only" designation. Moreover, revenue numbers and fee information are published through various sources on the internet, and GRI's use of that information to determine Nations' business in Illinois is permissible.

---

[1] Even though GRI disagrees with Nations' allegations, GRI will not quote the specific sentences at issue to avoid perpetuating the issue Nations raises in its Motion.

22819812 v1

In addition, and even though GRI does not agree with Nations' stance, GRI nonetheless attempted to resolve this issue with Nations by offering to seal (with the court's approval) the single lines at issue in the Motion for Leave and Complaint.  Nations' response that it would not agree to such a motion unless GR paid its attorneys' fees is yet another unfortunate example of Nations' gamesmanship and approach to this case.

The Court should not entertain Nations' gamesmanship and, instead, should deny Nations' Motion since GRI did not disclose Nations' Attorneys' Eyes Only information or violate the Agreed Confidentiality Order.[2]

## **RELEVANT BACKGROUND**

GRI filed its Motion for Leave on March 14, 2023, and attached its proposed Second Amended Complaint to that motion.  (Dkts. 42, 42-1.)  In the motion, GRI summarized the new facts it learned through jurisdictional discovery and its own investigation, as well as the new allegations that were included in the attached Complaint. (Dkt. 42 at 3-4.)  Those new facts included summaries of Nations' ties to Illinois and a high-level reference to Nations' revenue in Illinois. (*Id*.)  GRI purposely kept its summaries of the facts gleaned from jurisdictional discovery vague so that it would not be forced to file its Motion for Leave or Complaint under seal.  For similar reasons, GRI did not specifically identify any revenue or financial information of Nations in either its Motion for Leave or Complaint.  Nor did it attach any documents that specifically identify Nations' revenue or financial information.

Nations filed a response to GRI's Motion for Leave on April 4, 2023.  (Dkt. 43.)  In its response, Nations did not make *any* reference to GRI's purported disclosure of Nations' highly sensitive business information or violation of the Agreed Confidentiality Order.  Similarly,

---

[2] Unlike Nations, GRI will not ask the Court for an award of attorneys' fees in addition to denying Nations' Motion.

22819812 v1

between March 14th and April 6th (*i.e.* 20 days), Nations did not contact GRI about any concerns it had about GRI purportedly disclosing Nations confidential information to the public.

Then, on April 6, 2023, three weeks after GRI filed its Motion for Leave and Complaint, Nations contacted GRI's counsel by letter about its use of certain information in the Motion for Leave and Complaint. (Ex. A at ¶ 2.) In that letter, Nations claimed that GRI's reference to Nations' revenue figures at Dkt. 42 at 3 (second bullet point down) and Dkt. 42-1 at ¶ 19 disclosed "Attorneys' Eyes Only" information and violated the Agreed Confidentiality Order.[3]

Upon receiving this letter from Nations on April 6, 2023, counsel for GRI spoke with counsel for Nations via telephone several times over the following three weeks regarding the letter's assertions and finding a resolution. (Ex. A at ¶¶ 3-6.) In each of those conversations, counsel for GRI stated that the information raised in Nations' April 6th letter did not disclose Nations' confidential information. (*Id.* at ¶¶ 4-5.) GRI's counsel also asked Nations to revisit its position on whether it truly believed that the one sentence lines in the Motion for Leave and Complaint contained Nations' confidential information. (*Id.* at ¶ 6.)

On April 27, 2023, three weeks after Nations sent its letter, Nations answered GRI's inquiries by filing its Motion. (Dkt. 45.) Again, in the spirit of resolution, GRI offered to file the documents at issue under seal if Nations withdrew its Motion. (Ex. A at ¶ 7.) Nations refused, which makes clear that Nations' intentions for filing this Motion are not out of a concern for its confidential information. (*Id.* at ¶¶ 10-11.) Rather, Nations' intentions for the Motion are to deflect the facts that it tried to hide in its Motion to Dismiss, delay resolution of this matter, and further incur costs for the parties.

---

[3] *See* footnote 1, *supra*.

For these reasons, the Court should deny Nations' Motion. GRI's vague, high-level summary of facts assembled from jurisdictional discovery and public sources neither disclosed Nations' "Attorneys' Eyes Only" information nor violated the Agreed Confidentiality Order. Accordingly, Nations is not entitled to its attorneys' fees.

## **ARGUMENT**

### I. **GRI Did Not Disclose Nations' "Attorneys' Eyes Only" Information Or Violate The Agreed Confidentiality Order.**

The information that Nations claims GRI extracted from an "Attorneys' Eyes Only" document is neither a disclosure of Nations' "Attorney's Eyes Only" materials nor a violation of the Agreed Confidentiality Order. The unspecific, vague manner in which GRI refers to Nations' revenue and fees in its Motion for Leave and Complaint does not disclose any of Nations' confidential or "Attorneys' Eyes Only" information. GRI's one-line reference to Nations' revenues in Illinois neither provides specific financial numbers nor revenues. GRI also did not attach any "Attorneys' Eyes Only" documents or refer to any of Nations' financial documents in either the Motion for Leave or Complaint. In fact, GRI's one-line reference to Nations' revenues is so unspecific that it can be inferred from non-confidential and public sources. Therefore, GRI's purported disclosure cannot be a basis for violating the Agreed Confidentiality Order.

### A. **GRI's Statements about Nations' Revenue and Fees are Too Vague and Inferential to Constitute a Disclosure of Nations' "Attorneys' Eyes Only" Information.**

GRI's high-level estimation of Nations' revenues and fees cannot reasonably meet the definition of confidential or "Attorneys' Eyes Only" information within the Agreed Confidentiality Order.[4] The purpose of the Agreed Confidentiality Order is to protect from disclosure confidential

---

[4] To be clear, GRI does not dispute the designation of Corey Caster's deposition and NATIONS000012 as "Attorneys' Eyes Only." If it did dispute that these documents were improperly designated, GRI understands that it must challenge the designation outside of this Response.

22819812 v1

and proprietary information, such as business information, customer information, and commercial or financial information that the party has maintained as confidential. (Dkt. 30 at ¶ 2.) In that same vein, the purpose of the "Attorneys' Eyes Only" designation is to prevent disclosure of a Party's most highly sensitive information (*i.e.*, information that "would result in substantial competitive, commercial, or financial harm to the designating party or its personnel, agents, clients, or customers"). (*Id.* at ¶ 3.) Importantly, the Agreed Confidentiality Order explicitly states, "Information or documents that are available to the public may not be designated as Confidential Information," or by extension, "Attorneys' Eyes Only" information. (*Id.* at 2.)

The "Attorneys' Eyes Only" information that Nations claims was disclosed by GRI is so high-level and unspecific that it does not reveal anything to the public that the public could not learn itself from the internet and inferences based on the Illinois market. Where information can be inferred from public sources, there can be neither a disclosure of Nations' most sensitive information nor a violation of the Agreed Confidentiality Order. For example, in *Malibu Media, LLC v. Harrison*, the Court examined whether the defendant disclosed confidential information in violation of the confidentiality order. No. 1:12-CV-01117-WTL, 2014 WL 5598769, at *3 (S.D. Ind. Nov. 3, 2014), *report and recommendation adopted*, No. 1:12-CV-01117-WTL-MJ, 2014 WL 6851898 (S.D. Ind. Dec. 2, 2014). In that case, the defendant disclosed the plaintiff's "total yearly income," and the plaintiff accused the defendant of disclosing information the defendant found in the plaintiff's income tax returns, which plaintiff marked as confidential. *Id.* The defendant, however, testified that he obtained the estimate of the plaintiff's "total yearly income" by using publicly available subscription and subscriber numbers to arrive at an estimation of the company's yearly income. *Id.* The Court found that this information was not confidential because it was in

the public domain. *Id.* It followed that the disclosure of this information was not in violation of the confidentiality order. *Id.*

Likewise, here, there are several public sources that list Nations' revenue as $515.6 million. (*See* Ex. B.) Similar to *Malibu Media*, a member of the public could divide this number by the number of states in which Nations does business (50) and arrive at an estimation of approximately $10 million of revenue per state. Given that Nations is actively targeting Illinois through over 100 solicitation communications to GRI employees in Illinois, Nations' offices in the Chicagoland area (Evanston, Niles, and Schaumburg), and numerous Illinois-based GRI employees—coupled with Illinois being the sixth most populated state and Chicago the United States' third largest city—it is not a stretch for GRI to estimate Nations' Illinois revenue as higher than this amount.

Moreover, Nations' own published figures add up to GRI's estimations. For example, a press release issued by Nations lists Nations' revenue for 2017 as $118.7 million. (*See* Ex. C.) Then, Nations' own website specifies that Nations "has seen triple-digit revenue growth over the last three years (233 percent)." (Ex. D.) A 233 percent increase of $118.7 million amounts to approximately $396 million three years later, or approximately $7.92 million in revenue for each state. Again, taking into account Illinois' population and the potential for further growth since those statistics were released, GRI's estimations are not far off.

For the fees portion of the "offending" sentence, it is well-publicized that origination fees are typically between 0.5% and 1% of the total loan amount. (Ex. E.) The Scotsman Guide reported that Nations closed approximately $4.887 billion in loan volume in 2022. (Ex. F.) Assuming that Nations' fees amount to approximately 0.75% of the loan volume, then each of the 50 states in which Nations works would garner over $700,000 in fees. Hence, the public numbers

plus simple math reach the vague "Attorneys' Eyes Only" numbers that Nations claims GRI disclosed.

Thus, the purported "Attorneys' Eyes Only" information could not have been disclosed by GRI because there is enough publicly available information for a reasonable person to arrive at the same sums GRI included in its Motion for Leave and Complaint. In other words, GRI's unspecific summation of Nations' revenues and fees in Illinois do not offer the public any additional information about Nations that could not be inferred from public sources. *Malibu Media,* 2014 WL 5598769, at *3; *Lynch v. Southampton Animal Shelter Found., Inc*., No. CV 10-2917 ADS ETB, 2013 WL 80178, at *6 (E.D.N.Y. Jan. 7, 2013), *adhered to on reconsideration*, No. CV 10-2917 ADS ETB, 2013 WL 1563468 (E.D.N.Y. Apr. 12, 2013) (no violation of confidentiality order when information was already in the public domain when it was published to the public).

In addition, courts do not look favorably upon filings that are unnecessarily under seal and are generally reluctant to file information under seal. *See, e.g.*, *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co*., 178 F.3d 943, 945 (7th Cir. 1999) (parties cannot "seal whatever they want…[T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding."). For this reason, courts only permit parties to file documents under seal when the disclosure of information could cause harm to a party. *Baxter Int'l, Inc. v. Abbott Labs*., 297 F.3d 544, 545 (7th Cir. 2002) ("[D]ocuments… that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality."). Nations has not alleged (and cannot allege) that it suffered or will suffer any harm by GRI's purported disclosure.[5] Nor has Nations

---

[5] Nations cannot now claim or discuss the harm it suffered (or will suffer) in its Reply brief. *See Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019) ("[A]rguments raised for the first time in a reply brief are waived.") If Nations was suffering harm as a result of GRI's "disclosure," it should have identified that harm in its Motion.

shown any other basis for sealing GRI's one line reference to Nations' Illinois revenues and fees. Thus, filing the information under seal should not be warranted. *Malibu Media*, 2014 WL 5598769, at *2 ("Rule 26 contemplates filing under seal for 'good cause'") (quoting Fed. R. Civ. P. 26); *Baxter Int'l*, 297 F.3d at 546 (general assertions that the information is "commercial" with "no effort to justify the claim of secrecy" is not sufficient). Nevertheless, GRI offered to ask the Court to do so in order to accommodate Nations' request.

For these reasons, GRI's general reference to Nations' Illinois revenues and fees is neither a disclosure of Nations' Attorneys' Eyes Only information nor a violation of the protective order.

**B. Nations' Delay in Raising GRI's Alleged Disclosure Suggests Nations' True Motives in Bringing this Motion.**

Nations claims that it advised GRI of this issue and requested multiple times that GRI file its documents under seal. Nations, however, contacted GRI on April 6, 2023, three weeks after GRI filed its Motion for Leave and Complaint. Nations' letter also came <u>after</u> Nations filed its response in opposition to GRI's Motion for leave, and Nations made no mention of GRI's purported disclosure of its "Attorneys' Eyes Only" information in its response. Thus, GRI's disclosure cannot be that important to Nations or harmful to Nations' "competitive, commercial, or financial" interests. If GRI's disclosure was an emergency, then Nations would have reached out immediately. *See, e.g.*, *Sandoz, Inc. v. United Therapeutics, Corp.*, No. 319CV10170BRMLHG, 2020 WL 3567287, at *1 (D.N.J. June 30, 2020) (defendants reached out to plaintiffs within 1 hour and 12 minutes when plaintiffs publicly filed what defendants believed was designated highly confidential).

In fact, in the cases Nations cites in support of its Motion, the offended party raised their concerns over the disclosure of protected information with opposing counsel, and/or sought court intervention, within **one** week of the disclosure. *Segerdahl Corp. v. Ferruzza*, No. 17-cv-03015,

2018 WL 11199040, at *4 (N.D. Ill. Sept. 19, 2018) (plaintiff's Petition for Rule to Show Cause was filed six days after defendant's counsel disclosed documents purportedly in violation of the Confidentiality Order); *Instant Tech., LLC v. DeFazio*, No. 12 C 491, 2013 WL 5966893, at *1 (N.D. Ill. Nov. 8, 2013) (defendants' counsel notified plaintiffs' counsel six days after the purported disclosure of confidential information.) Thus, Nations' three-week delay in notifying GRI of its purported disclosure and violation of the Agreed Confidentiality Order indicates that Nations' real motive is gamesmanship, not the need to protect its information or mitigate its harm. Indeed, if Nations' "competitive, commercial, or financial" interests were truly threatened, Nations would not have waited three weeks to notify GRI.

For these reasons, GRI did not disclose Nations' "Attorneys' Eyes Only" information or violate the Agreed Confidentiality Order. Nations' Motion must be denied.

## II.      Nations is not Entitled to Attorneys' Fees.

Federal Rule of Civil Procedure 37(b) permits the court to enter "further just orders," and directs that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A), (C). In other words, the Court has discretion to award or not award attorneys' fees when doing so would be unjust. *See, e.g.*, *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011).

The Motion at hand is a circumstance where awarding attorneys' fees is unjust and unwarranted. Nations' actions have made clear that its sole goal in seeking this Motion is to recover attorneys' fees. When GRI asked Nations whether it would withdraw its Motion if GRI filed the purported offending sentences under seal, Nations flatly refused. Thus, the Court's

22819812 v1

intervention and all judicial and party resources associated with this Motion could have been avoided had Nations cared about its purported "Attorneys' Eyes Only" information. Instead, Nations' actions have dragged this issue out by multiple weeks. *See, e.g.*, *Sandoz*, 2020 WL 3567287, at *8 (denying Defendants' motion for sanctions where "Defendants contributed to the escalation of costs that Defendants themselves complain of in [their] Motion by waiting at least three-and-a-half **hours**" to alert the Court of Plaintiffs' disclosure of highly confidential information) (emphasis added).

The cases that Nations cite for support of its request for attorneys' fees are equally unavailing. All of the cases address egregious violations of a confidentiality order or protective order. For example, in *Segerdahl*, the plaintiff brought a Petition to Show Cause, which requested the Court to compel a defendant to show cause why it should not be held in contempt for violating the Confidentiality Order. 2018 WL 11199040, at *5. Aside from not being procedurally analogous, *Segerdahl* addresses a circumstance where defendant's counsel provided numerous confidential documents to a third-party. *Id*. at *7. Likewise, in *Instant Tech*, the Court found that "highly sensitive financial" documents that were designated by the Defendant as "Confidential" pursuant to a protective order were filed on the public docket by plaintiff, its competitor. 2013 WL 5966893, at *3-4. The Court allowed an assessment of attorneys' fees against the plaintiff because there was a question of whether defendants' highly sensitive financial information made its way to plaintiff's employees. *Id.*

The same concerns are not present here. GRI has not disclosed numerous documents that Nations marked as "Attorneys' Eyes Only" publicly. Nor has GRI disclosed Nations' highly sensitive financial information to its employees. In fact, there is very little any GRI employee would be able to do with a vague summary of Nations' Illinois revenue and fee information. GRI

11

employees can also deduce the same information from public sources. Accordingly, the Court should not grant Nations its attorneys' fees. *Malibu Media*, 2014 WL 5598769, at *3 (no sanctions for disclosing information that could be estimated based on numbers in the public domain); *Lynch.*, 2013 WL 80178, at *5-6 (no sanctions for disclosing information that could be found in the public domain).

In the alternative, if the Court finds that GRI did disclose Nations' "Attorneys' Eyes Only" information and/or GRI violated the Agreed Confidentiality Order, it should find that the disclosure was harmless and caused Nations no damages. Under such circumstances, Courts do not assess sanctions or attorneys' fees because the assessment would be unjust. *See Malibu Media*, 2014 WL 5598769, at *5 (no assessment of sanctions for the defendant's violation of terms of the confidentiality order where "the conduct was harmless."); *Lynch*, 2013 WL 80178, at *7 (no sanctions where "[t]he disclosure… is negligible, insignificant, and *de minimis*" because no one "has suffered any harm or damages as a result of the challenged disclosure"). Here, any "disclosure" by GRI is likewise harmless to Nations. Nations' Motion alleges no harm and Nations can show no harm it may suffer due to GRI's unspecific, one-line reference to its Illinois revenues and fees.

For these reasons, Nations' Motion should be denied. GRI has neither disclosed Nations' "Attorneys' Eyes Only" information nor violated the Agreed Confidentiality Order. Nations has also not demonstrated it is harmed or entitled to attorneys' fees.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Guaranteed Rate, Inc. respectfully requests that this Court enter an Order denying Nations' Motion for Relief for Violations of the Agreed Confidentiality Order and granting such other relief as the Court may deem just and proper.

12

Dated: May 19, 2023

/s/ J. Scott Humphrey
J. Scott Humphrey
Katie M. Burnett
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive
Suite 1600
Chicago, IL 60606-4637
Telephone: 312-212-4940
shumphrey@beneschlaw.com
kburnett@beneschlaw.com

*Counsel for Guaranteed Rate, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I electronically filed foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to each of the attorneys who filed an appearance in this case.

/s/ J. Scott Humphrey

*One of the Attorneys for Plaintiff*

22819812 v1