**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| GUARANTEED RATE, INC., | ) | |
| | ) | Case Number:  22 CV 2342 |
| | ) | |
| Plaintiff, | ) | Judge:  Robert W. Gettleman |
| | ) | |
| v. | ) | Magistrate Judge:  Jeannice W. Appenteng |
| | ) | |
| EIRIK RORVIG and NATIONS LENDING | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**GUARANTEED RATE, INC.'S MOTION TO COMPEL**
**NATIONS LENDING CORPORATIONS' DISCOVERY RESPONSES**

Plaintiff Guaranteed Rate, Inc., ("Plaintiff" or "GRI"), by and through its undersigned attorneys and pursuant to Federal Rules of Civil Procedure 26, 34, and 37, respectfully requests that this Court enter an order compelling Defendant Nations Lending Corporation ("Defendant" or "Nations") to produce documents in response to GRI's Third and Fourth Sets of Requests for Production ("RFP") ("Motion"). In support of this Motion, GRI states as follows:

**INTRODUCTION**

Despite GRI's meet-and-confer efforts—including email correspondence and teleconferences—Nations has demonstrated an unwillingness to produce documents responsive to three of GRI's document requests that relate to GRI's damages in this case. Specifically, Nations objects to requests asking them to produce documents and communications reflecting or relating to: (1) commission statements for each of the individuals who left GRI and became employees at Nations ("Former GRI Employees")[1]; (2) pipelines and closed loans for each of the Former GRI Employees; and (3) real estate agents to the extent such agents served as referral sources for the

loans. Each of these requests are within Nations' possession, custody, or control, and are relevant and necessary for GRI to assess damages. Nations has not provided sufficient justification for its objections and refuses to produce the requested documents. After exhausting all other efforts to obtain the records in Nations' possession, GRI now asks this Court to compel Nations to produce documents responsive to GRI's RFPs.

## FACTUAL BACKGROUND

This action arises from Defendants Nations' and Eirik Rorvig's (collectively, "Defendants") misuse of GRI confidential information, Rorvig's violation of the duties and obligations he owed GRI both before and after the termination of his GRI employment, and Nations' illegal pilfering of Former GRI Employees. Nations is a direct competitor of GRI. *See* Dkt. 52, GRI's Second Amended Complaint ("Complaint"), at ¶ 3. In December 2021 through January 2022, Nations orchestrated a scheme whereby ten GRI employees, including Defendant Eirik Rorvig ("Rorvig"), abruptly left GRI to join Nations. *Id.* at ¶132. A key part of the scheme was to have the Former GRI Employees breach their contractual, non-solicitation, and fiduciary obligations to GRI by encouraging the Former GRI Employees to help solicit current GRI employees to move to Nations. *Id.* at ¶ 8. Nations' and Rorvig's scheme was furthered between February 2022 and September 2022 when an additional twenty-one GRI employees resigned from GRI to join Nations, often resigning in small groups on the same day. *Id.* at ¶132.

---

[1] Former GRI Employees are listed in paragraph 132 of Plaintiff's Second Amended Complaint: Meredith Richardson, Barbara Miller, Eirik Rorvig, Kyle McManners, Randy Barwick, Chris Rollins, Paul Gagne, Richard Cohen, Lee Kampa, Dawn Kaczmark, Katie Dorece, Nick Wurzer, Adam Cook, Matt Hoekstra, Richard Demonica, Brady Griffin, Gregory Griffin, Brian Augustine, Caise Hassan, Dave Oller, Amy Pinkerton, Christian White, Matt Medinger, Fabian Herrera, Rafal Nawara, Jose Razo, Hasan Abutaleb, Jash Chavero, Andrew Creagh, Oscar Padilla, John Pearson, Isabel Perez, Kyle Perks, Kevin Scott, Angie Wozniak, Ashley Arroyo, Alysse McHale, Dayanara Medina, David Pinelli, Christopher Tylka, and Michael Curtin.

Although GRI has obtained several pieces of information relating to Defendants' illegal conduct—such as a "wish list" of GRI employees created by Rorvig that was used by Nations to solicit GRI employees—the full extent of Defendants' conduct continues to be uncovered. Unfortunately, Defendants have taken significant steps to conceal their wrongdoing from GRI, including holding meetings in person, texting on personal devices, messaging on social media platforms, and having oral conversations on the telephone to covertly poach current GRI employees. (Dkt. 52, Compl. ¶12.)  Thus, over the course of discovery, GRI issued RFPs to Nations geared toward discovering information related to Defendants' actions with respect to GRI's breach of contract, misappropriation of trade secrets, tortious interference, and breach of fiduciary duty allegations. In connection with discovering information related to GRI's claims, GRI requested that Nations produce documents relating to GRI's damages in this case.  Nations, however, has been reluctant to provide GRI with any such information.

I.      **GRI's RFP No. 58 and 59**

On April 12, 2024, GRI served its Third Set of Requests for Production to Nations ("Third Set of RFPs").  The Third Set of RFPs asked Nations to produce documents related to commission statements for each of the Former GRI Employees, Rorvig, and Timothy Dowling (another former GRI employee who was instrumental in Nations illegal raiding and misappropriation activities), as well as documents sufficient to show pipelines and closed loans for each of the Former GRI Employees, Rorvig, and Timonthy Dowling.  This information is relevant and necessary to, among other things, establish damages to GRI that result from Nations' solicitation of GRI's employees and diversion of GRI's business. On May 13, 2024, Nations provided its responses and objections to GRI's Third Set of RFPs. *See* Nations' Responses and Objections to GRI's Third Set of RFPs, attached as **Exhibit A**. GRI immediately took issue with and raised concerns about Nations'

responses to RFP Nos. 58 and 59 to Nations.

GRI's RFP No. 58 requests, "Any and all Documents and Communications relating to commission statements for each of the Former GRI Employees, Rorvig, and/or Dowling for 2020, 2021, 2022, and 2023." These documents will enable GRI to assess the full scope of damages, as well as provide circumstantial evidence of whether Nations was encouraging the Former GRI Employees to divert business from GRI to Nations. Nations responded and objected on several bases, stating:

> Nations objects to this Request as overbroad in temporal scope as overbroad and unduly burdensome [and] as duplicative of previous discovery requests and refers Plaintiff to its Responses to RFP Nos. 7, 10, and 13. Subject to and without waiving the foregoing objections, including the General Objections, Nations will produce applicable commission statements for Rorvig and Dowling for the years 2021, 2022, and 2023.

**Ex. A**, p. 7–8. RFP No. 7 and 10 relate only to Rorvig's and Dowling's compensation. RFP No. 13 relates to compensation statements for Former GRI Employees. Nations, however, produced employment agreements containing employees' compensation figures—but not their commission statements.

GRI's RFP No. 59 requests, "Any and all Documents or Communications sufficient to show pipelines and closed loans for each of the Former GRI Employees, Rorvig, and/or Dowling for 2020, 2021, 2022, and 2023, including the borrower name, loan amount, funded date, and application date." These documents will provide information about the volume and amount of loans closed by each of the Former GRI Employees, which will then enable GRI to assess the full scope of damages. The pipeline documents will also provide information on the referral source of the loan, such as the real estate agent who referred the loan to the Former GRI employee(s), Dowling and/or Rorvig.

This information is relevant because GRI has uncovered evidence of the Former GRI

4

employees working with real estate agents that were introduced to them by GRI to solicit and transfer business away from GRI—in other words, the Former GRI employees have diverted business to Nations using referral sources they gained access to and learned about through their work at GRI. The referral information GRI requested from Nations is therefore critical to proving GRI's damages because it will provide evidence of the Former GRI Employees using GRI's confidential information at Nations—the referral sources they were provided by virtue of their employment at GRI—to refer borrowers to Nations they otherwise were previously referring and would have continued to refer to GRI. The referral information will also help explain why Nations illegally targeted GRI employees to violate their GRI Agreements. Namely, Nations understood that it could obtain an unfair head start in the marketplace if it induced GRI employees to violate their GRI Agreements and then use GRI referral sources to establish a footprint in markets never previously developed or explored by nations.

> Nations responded and objected to RFP No. 59 on several bases, stating:
>
> Nations objects to this Request as vague and ambiguous . . . as overbroad in temporal scope. . . . as overbroad and unduly burdensome . . . neither relevant to any party's claim or defense nor proportional to the needs of the case. . . . as duplicative of previous discovery requests and refers Plaintiff to its Responses to Interrogatory Nos. 1 and 2, to its Responses to RFP Nos. 36, 37 and 50, to Eirik Rorvig's Responses to RFP Nos. 19, 35, 36, 37, and 38, and to Eirik Rorvig's Responses to Interrogatory Nos. 16 and 17.

**Ex. A**, p. 7–8. Interrogatories Nos. 1–2 relate to Nations' knowledge of previous GRI customers; RFPs to Nations Nos. 36, 37, and 50 and RFPs to Rorvig Nos. 19, 35–38 relate to documents concerning GRI's customers; and Interrogatories to Rorvig Nos. 16 and 17 relate to documents concerning GRI's customers. Thus, none of these Requests or Interrogatories ask for pipelines or closed loans, and no pipelines or closed loans ("pipeline reports") were identified in response to these Requests or Interrogatories. On or about May 29, 2024, Nations made a supplemental

production to GRI, which also did not contain any documents responsive to RFP Nos. 58 or 59 with respect to the Former GRI Employees.

On June 7, GRI's counsel emailed Nations' counsel to inquire about the status of productions for RFP Nos. 58 and 59. *See* June 7, 2024 email thread attached as **Exhibit B**. The parties met and conferred on June 17, 2024 about Nations' responses and objections to RFP Nos. 58 and 59. During the June 17 meeting, GRI communicated to Nations that with respect to RFP No. 58, GRI sought the commission statements of all Former GRI Employees because, as stated above, these documents are relevant to GRI's claims that Nations encouraged or is encouraging the diversion of business from GRI to Nations. GRI also explained that its RFP No. 59 sought pipeline reports for the same reasons. GRI explained that both of the RFPs are geared toward uncovering GRI's damages. After several additional meet and confers, Nations stated it did not intend to produce any documents responsive to these RFPs with respect to the Former GRI Employees.

## II.     GRI's RFP No. 62

Separately, GRI served its Fourth Set of RFPs on Nations on June 7, 2024, which only contained RFP No. 62: "Any and all Documents and Communications between the Former GRI Employees, Rorvig, and/or Dowling and real estate agents." *See* Nations' Responses and Objections to GRI's Fourth Set of RFPs, attached as **Exhibit C**. Nations responded on July 8, 2024 as follows:

> Nations objects to this Request as vague and ambiguous in its use of the term "real estate agents." Nations further objects to this Request as overbroad and unduly burdensome in seeking "[a]ny and all" documents and communications, in its lack of temporal scope, geographic restriction, and subject matter restriction, and because it would require an exhaustive analysis of every potential "real estate agent" that any of 40-plus individuals may have communicated with during an undefined time period. Nations further objects to this Request as neither relevant to any party's claim or defense nor proportional to the needs of

the case. Nations further objects to this Request as seeking confidential commercial information related to Nations' referral sources.

**Ex. C**.   In other words, Nations refuses to provide any information responsive to RFP. No. 62.

### III.    The Parties' Meet and Confer Efforts

Following the June 17 meet and confer conference regarding RFP Nos. 58 and 59, GRI filed a motion to compel documents in response to those RFPs on July 3, 2024. (Dkt. 88.)  The Court directed the parties to meet and confer regarding the discovery disputes and to file a joint status report indicating the parties' resolution efforts.  (Dkt. 89.)

GRI and Nations then met and conferred by telephone on July 12 to discuss the content of the meet and confer regarding RFP Nos. 58 and 59 as well as Nations' response to RFP No. 62. (Dkt. 90.)   For RFP Nos. 58 and 59, Nations offered commission statements and "closed loan information through the commission statements" for eleven Former GRI Employees: Alysse McHale, Brian Augustine, Caise Hassan, Catherine Dorece, Christian White, Christopher Broadhurst, Gregory Griffin, Michael Curtin, Nicholas Wurzer, Randall Barwick, and Richard DeMonica. *See* June 12, 2024 email thread attached as **Exhibit D**.

In response to Nations' proposal, on July 22 (by telephone) and July 23 (by email), GRI advised that there are a number of loan originators and/or managers who would earn a commission that Nations excluded from the list of eleven Former GRI Employees.  Accordingly, GRI agreed to limit RFP 58 to only seek commission statements for the Former GRI Employees who functioned as loan originators and/or managers at Nations.  In other words, GRI limited RFP 58 to exclude any Former GRI Employees who were not loan originators or managers at Nations, based on Nations' representations of which employees at Nations held loan originator or manager positions.  **Ex. D**.   GRI asked Nations to provide the list as Nations would know the roles that each of the Former GRI Employees held at Nations.

Likewise, GRI agreed to limit RFP No. 59. GRI proposed limiting RFP No. 59 to pipeline reports for each of the Former GRI Employees who functioned as a loan originator or manager (i.e. the same list of individuals as RFP No. 58). Further, GRI proposed that the pipeline reports could be a single report aggregating the Former GRI Employees and containing fields for (a) pre-qualifications, (b) any applications submitted to Nations that closed at Nations, (c) loans in process through December 31, 2023, (d) and the referral source for the loan. GRI also advised that if Nations was able to provide the referral source for the loans listed on the report, the information would satisfy GRI's RFP No. 62. Finally, GRI noted that Defendant Eirik Rorvig ("Rorvig") testified about Nations' "sophisticated" "MMI Intelligence" and "Modex" programs, which allow Nations to "look up loan officer production, contact information, [and] real estate agents." *See* May 21, 2024 transcript of Eirik Rorvig deposition attached as **Exhibit E,** at 106:11-107:9. Thus, according to Rorvig, retrieving the pipeline reports or information would not be difficult, burdensome or time-consuming for Nations.

Nations responded to GRI's proposals on July 29, 2024. In doing so, Nations offered to provide (1) written confirmation of which of the Former GRI Employees are/were not originators and/or managers at Nations, and (ii) commission statements containing information only about closed loans for the Former GRI Employees who are/were originators and/or managers at Nations, through the six months following their respective transitions to Nations. In other words, Nations' counter-proposal imposed a new six-month limitation, and only agreed to provide information about loans that actually closed, but not about loans that were in the pipeline as loan applications in process or prequalifications. And, Nations refused to provide information about referral sources for the loans in the Former GRI Employees' pipelines. Nations continues to refuse to reach a compromise for GRI's RFP Nos. 58, 59 and 62.

GRI needs the information requested in RFP Nos. 58, 59, and 62 so that it can meaningfully perform its damages analysis. This information is not accessible to GRI via public sources or through any other means. Moreover, the information requested from Nations is only in Nations' possession, custody, and control—and is easily accessible from Nations' "MMI Intelligence" and "Modex" internal programs. For these reasons, the Court should grant GRI's Motion and compel Nations to produce documents responsive to RFPs No. 58, 59, and 62.

## ARGUMENT

### I.    Legal Standard

Under Rule 34, "a party may serve on another party a request within the scope of Rule 26(b)" to produce document or electronically stored information in the party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1)(A). *See Fulton v. Foley*, No. 17 C 8696, 2018 WL 11199090, at *1 (N.D. Ill. Aug. 28, 2018) (granting motion to compel when moving party established documents requested were in opposing party's control). Under Federal Rule of Civil Procedure, Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining scope of relevance under Rule 26, "relevance is construed broadly, and is not limited to issues raised by the pleadings." *Barnes-Staples v. Murphy*, No. 20-CV-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021) (internal citations omitted).

Federal Rule of Civil Procedure 37(a)(1) provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The district court exercises significant discretion in ruling on a motion to compel. The district court may grant or deny the motion in whole or in part, and… the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495–96 (7th Cir. 1996). The value of the materials sought and the burden of providing

the same should also be considered when ruling on motions to compel. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

RFP Nos. 58, 59, and 62 are relevant to GRI's claims, including its damages calculations, and the value of the materials sought in response to RFP 58, 59, and 62 for GRI's case far exceeds the burden on Nations of providing them. Nations has no basis for withholding documents responsive to these RFPs, and accordingly, should be compelled to produce them.

## II.     Documents Responsive to RFP Nos. 58, 69, and 62 Are Relevant And Necessary for GRI's Damages Analyses.

Nations should be compelled to produce documents responsive to RFP Nos. 58, 59, and 62 because the documents are relevant to GRI's damages, not burdensome for Nations to gather and produce, and only available from Nations. Accordingly, Nations has no good reason for withholding the documents.

In RFP No. 58, GRI asks Nations for documents relating to commission statements for the Former GRI Employees, Rorvig, and Timothy Dowling. Nations only produced commission statements for Rorvig and Timothy Dowling and refuses to produce commission statements for the Former GRI Employees. The two commission statements for Rorvig and Dowling provide GRI with very little information for GRI to conduct a full damages analysis because Dowling's and Rorvig's commission statements contain no information relating to the other thirty GRI employees that joined Nations. While GRI and Nations were able to agree on the scope of the Former GRI Employees for whom Nations should produce commission statements (i.e. the loan originators and managers), the parties are unable to agree to a time limitation for the statements. Nations suggests six months as the time limitation, but GRI requests that Nations provide commission statements through December 31, 2023. GRI must be able to conduct a full damages analysis, and it cannot do so based only on six months. Indeed, many of the solicitations and

departures occurred in 2022, and GRI requires at least one full year of statements to perform its analysis.

Likewise, in RFP No. 59, GRI asks Nations for documents relating to Nations' pipeline reports for each of the Former GRI Employees. Nations only agreed to produce pipeline reports for Rorvig and Dowling, and, similar to the commission reports, the pipeline reports for Dowling and Rorvig are insufficient for GRI's damages analysis since Dowling's and Rorvig's pipeline reports contain no information relating to the pipelines of the other thirty employees who departed GRI for Nations. Specifically, GRI seeks a pipeline report (or multiple reports) that specifies the following information: (a) pre-qualifications, (b) any applications submitted to Nations that closed at Nations, (c) loans in process through December 31, 2023, (d) and the referral source for the loan. GRI seeks this information for each of the Former GRI Employees that were loan originators and managers at Nations (i.e. the same individuals at issue in RFP No. 58). Despite GRI's proposed limitations, Nations wholly refuses to produce this information. Similarly, GRI indicated that RFP No. 62 may be satisfied by providing the referral source for the loans identified in the pipeline report(s) requested in RFP No. 59. Nations, nonetheless, outright refuses to provide any responsive information to RFP No. 62.

Each of these Requests are relevant to GRI's claims and defenses, necessary for GRI's damages analysis, and not burdensome for Nations to produce. The commission statements (RFP No. 58) and pipeline reports (including the referral source information) (RFP Nos. 59 and 62) for each of the Former GRI Employees are relevant because they (a) identify whether the Former GRI employees are using the same referral sources that were provided to them by GRI[1]; (b) provide

---

[1] As discussed above, the identity of the referral sources will help further determine the extent of Nations illegal misappropriation and use of GRI's confidential information, and provide additional evidence of the illegal "head start" and enrichment Nations obtained as a result of having the Former GRI employees violate the duties and obligations they owe(d) GRI.

information about the volume, amount, and source of the loans closed by each of the Former GRI Employees; (c) will be beneficial for GRI's damages analysis; (d) are likely to show the Former GRI Employees are using GRI's confidential information at Nations to harm GRI through the solicitation of GRI customers; and/or (e) are likely to show that Nations was encouraging the Former GRI Employees to divert business from GRI to Nations using referral sources and resources compiled by GRI and provided to the Former GRI Employees by GRI in conjunction with and for the purpose of their employment with GRI. These items correlate with the allegations in the Complaint that GRI provided the Former GRI Employees with its confidential information; Nations encouraged the Former GRI Employees to breach their employment agreements and use GRI confidential information to benefit Nations; and GRI was damaged by Nations' pilfering of its employees and confidential information. Complaint ¶¶ 1, 2, 8, 12, 29–32, 56, 59, 64, 68–69, 76, 79–80, 91, 115, 125–126, 141–146.

Furthermore, GRI engaged a damages expert who is analyzing the few documents containing financial information related to Former GRI Employees that Nations provided GRI. Documents responsive to RFPs 58, 59, and 62 will assist the damages expert in, for example, assessing the replacement costs for each Former GRI Employee, how long it will take GRI to recover from the loss of these employees, and the damages inflicted upon GRI as a result of Nations using GRI confidential information and encouraging Former GRI Employees to violate the duties and obligations they owed/owe GRI. These issues and analysis are necessary for GRI to effectively prosecute its case and assess its damages.

These Requests are also not unduly burdensome to Nations. Nations' financial team likely regularly monitors the information sought, and it is unlikely that production of the statements will require Nations to do anything other than generate a report. Indeed, according to Rorvig, Nations

has two programs—MMI Intelligence and Modex—that aggregate the precise information sought by these RFPs. Moreover, the documents requested are only obtainable from Nations. GRI cannot obtain them through public sources, and GRI cannot obtain full information for its damages calculations from its ten depositions alone. Finally, Nations has not provided sufficient justification for its refusal to produce the requested documents. To the extent that GRI is withholding documents or information responsive to RFP No. 62 on the basis that GRI seeks "confidential commercial information related to Nations' referral sources," GRI encourages Nations to make use of the "Attorneys' Eyes Only" confidentiality designation. That designation limits disclosure to the attorneys and is designed to prevent disclosure of sensitive business information. Dkt. 30. Nations, therefore, has no basis to withhold the requested information.

Naturally then, courts in this jurisdiction routinely order a defendant to produce this information. *See In re Aqua Dots Prod. Liab. Litig.*, 270 F.R.D. 322, 326 (N.D. Ill. 2010), *aff'd*, 654 F.3d 748 (7th Cir. 2011) (finding that financial information requested is discoverable and relevant to damages, and granting motion to compel its disclosure); *see also Kove IO, Inc. v. Amazon Web Servs., Inc.*, No. 18 C 8175, 2021 WL 4516413, at *5 (N.D. Ill. July 14, 2021) ("[Plaintiff] need not prove its damages theory on the merits at this stage to gain access to [defendant's] financial information."); and *United States v. Autumn Ridge Condo. Ass'n, Inc.*, 265 F.R.D. 323, 327 (N.D. Ind. 2009) (granting a motion to compel disclosure of financial information relevant to damages because witness testimony indicated that financial information produced was incomplete).

For these reasons, the Court should compel Nations to provide GRI with documents and communications responsive to RFP Nos. 58, 59 and 62.

**RULE 37 COMPLIANCE**

Prior to filing this Motion, counsel for GRI spoke with Nations' counsel via a formal meet-and-confer and email correspondence in good faith to resolve the dispute over production of documents responsive to RFPs 58, 59, and 62. After several communications, GRI understood that Nations would not produce documents responsive to the RFPs without Court intervention or significant limitations.

**CONCLUSION**

WHEREFORE, Plaintiff Guaranteed Rate, Inc. respectfully requests that this Honorable Court grant its motion and enter an Order as follows: (a) compelling Nations Lending Corporation to produce documents responsive to RFP Nos. 58, 59, and 62; and (b) ordering any further relief this Court deems appropriate.

Dated: August 2, 2024

Respectfully submitted,

*/s/ J. Scott Humphrey*
J. Scott Humphrey
Katie M. Burnett
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive Suite 1600
Chicago, IL 60606-4637
Telephone: 312-212-4940
shumphrey@beneschlaw.com
kburnett@beneschlaw.com
*Counsel for Guaranteed Rate, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 2, 2024, GRI electronically filed the foregoing

*Motion to Compel Nations Lending Corporations' Discovery Responses* with the Clerk of the

Court using the CM/ECF System, which will send notification of such filing to the attorneys listed

below.

**BY CM/ECF SYSTEM**
Gregory P. Abrams
gregory.abrams@tuckerellis.com
Connor J. Doughty
connor.doughty@tuckerellis.com
**TUCKER ELLIS LLP**
233 South Wacker Drive, Suite 6950
Chicago, IL 60606
T: (312) 256-9444

*/s/ J. Scott Humphrey*

*One of the Attorneys for Plaintiff*